# EXHIBIT 8

Docusign Envelope ID: C392027E-5BA0-4C4E-8231-F788236C4179



January 16, 2026


Mr. Rafael Rivera
Acting Director
Grants Management Division
National Oceanic and Atmospheric Administration
U.S. Department of Commerce
1401 Constitution Avenue NW, Room 5128
Washington, D.C. 20230


Subject: Administrative Appeal and Objection to Termination of NOAA Award
    NA23OAR4310473B

Dear Mr. Rivera:

The University Corporation for Atmospheric Research ("UCAR") is in receipt of your letter, dated December 19, 2025, notifying UCAR that the National Oceanic and Atmospheric Administration ("NOAA") and the U.S. Department of Commerce (the "Department") would cease funding for NOAA Award NA23OAR4310473B (the "Award") pursuant to 2 C.F.R. § 200.340 ("Termination Notice") because it "no longer effectuates the program goals or agency priorities." Specifically, you cited as a basis for termination that "UCAR/NOAA Climate Adaptation and Mitigation Program (CAMP) activities are no longer aligned with effectuating [current programmatic goals and agency priorities]" because activities carried out under the Award rely "heavily on theoretical research and long-term academic partnerships, rather than the agency's priority of applied, commercializable outcomes or private sector collaborations."

This correspondence is intended to serve as UCAR's administrative appeal of the Department's decision to terminate the above-referenced Award pursuant to 2 C.F.R. § 200.342 and established principles of federal administrative law.

As an initial matter, we note that neither the Termination Notice nor provisions governing the above-referenced Award clearly articulate the Department's right to terminate the Award based on the reasons cited by the Department or the "procedures for processing objections, hearings, and appeals" as required by 2 C.F.R. § 200.342. As such, the Termination Notice and terms of the Award are procedurally deficient. Nevertheless, UCAR is submitting this appeal letter to preserve all rights and remedies afforded by law. If the Department has established alternative procedures that comply with 2 C.F.R. § 200.342, please advise UCAR of such procedures immediately and consider this letter to be notice of UCAR's intent to appeal the termination decision.

Mr. Rafael Rivera
January 16, 2026

Notwithstanding the Department's noncompliance with the requirements of 2 C.F.R. § 200.342, UCAR appeals the Department's termination decision because it is not authorized by the applicable provisions of the Uniform Guidance (2 C.F.R. Part 200), is procedurally deficient, and is inconsistent with the terms and conditions of the Award as well as congressional intent. The decision should therefore be rescinded and the Award reinstated without interruption or, alternatively, the conditions of the Award should be modified and its scope redefined as permitted and outlined in Section V.

## I.    The Award, NOAA's Prior Determinations, and the Recipient's Performance

On or about September 21, 2023, the Department entered into a cooperative agreement with UCAR for the Award. The Award resulted from a competitive and merit-based review process in connection with the Climate Adaptation Partnerships ("CAP") Program overseen by NOAA's Climate and Societal Interactions ("CSI") division of the Climate Program Office ("CPO"). As you know, the CPO is a congressionally created office established to oversee the National Climate Program ("NCP") pursuant to 15 U.S.C. § 2904, *et seq.*, which is cited by NOAA together with other statutory provisions as authorizing the Award.

As you also know, the CPO provides financial assistance in the form of contracts, grants or cooperative agreements for climate-related activities needed to meet the goals and priorities of the NCP. 15 U.S.C. § 2904(c)(3). Those goals and priorities include engaging in and supporting:

- assessments of the effect of climate on the natural environment, agricultural production, energy supply and demand, land and water resources, transportation, human health and national security;

- basic and applied research to improve the understanding of climate processes, natural and man-induced, and the social, economic, and political implications of climate change;

- methods for improving climate forecasts on a monthly, seasonal, yearly, and longer basis;

- global data collection, and monitoring and analysis activities to provide reliable, useful and readily available information on a continuing basis;

- systems for the management and active dissemination of climatological data, information, and assessments, including mechanisms for consultation with current and potential users;

- measures for increasing international cooperation in climate research, monitoring, analysis, and data dissemination;

- research and advisory services, including atmospheric data collection and monitoring on a statewide and regional basis;

- experimental climate forecast centers responsible for making and routinely updating experimental climate forecasts of a monthly, seasonal, annual, and longer nature, based on

2

Mr. Rafael Rivera
January 16, 2026

a variety of experimental techniques, establishing procedures to have forecasts reviewed and their accuracy evaluated; and

- protecting against premature reliance on such experimental forecasts.

As more fully explained in the Notice of Federal Funding Opportunity that resulted in the Award, the CAP Program is an applied research and engagement program aligned with the NCP. It is intended to expand regional capacities to adapt to climate impacts in the United States through learning about climate adaptation and resilience facilitated by and sustained across a wide range of experts, practitioners, and the public. Notably, nothing in the congressional intent in authorizing such appropriations or the Award documents express a preference for "applied, commercializable outcomes or private sector collaborations" as stated in the Termination Notice. Rather, activities funded through the Award align with not only the purpose and intent of the CAP Program and terms and conditions of the Award, but the broader priorities of the NCP.

Specifically, NOAA intended the Award at the time it was issued to fund research, programs, projects, and other activities related to NOAA's mission, primarily through collaborations among federal agencies, scientists, technical staff, and professionals in areas of mutual interest across the spectrum of weather, extremes, and variability sciences, including:

- improved scientific understanding of extreme weather impacts and variability across seasonal and sub-seasonal timescales;

- scientific assessments of current and future states of the weather system that identify potential impacts and inform science, service, and stewardship decisions;

- mitigation and adaptation efforts supported by sustained, reliable, and timely scientific services to improve forecasting and risk reduction; and

- an increased public understanding of weather impacts and vulnerabilities to enable improved decision-making, infrastructure development, and economic security.

As such, in issuing the Award, NOAA expressly determined that the proposed project:

- was authorized by the governing statute and appropriations identified above and in the resulting cooperative agreement;

- effectuated clearly identified program goals, congressional mandates and agency priorities as articulated in the applicable Notice of Funding Opportunity and in line with priorities identified through the NCP;

- was technically feasible, appropriately scoped, and supported by a reasonable and NOAA-approved budget; and

3

Docusign Envelope ID: C392027E-5BA0-4C4E-8231-F788236C4179

Mr. Rafael Rivera
January 16, 2026

- warranted the obligation of federal funds for the full performance period set forth in the Notice of Award.

As such, UCAR and its partners have utilized Award funds to achieve these priorities and untold benefits in scientific research and understanding. Moreover, in carrying out such activities, UCAR has acted in good-faith reliance on NOAA's determinations, the funding obligation set forth in the cooperative agreement resulting from the Award, and the terms and conditions governing the Award.  Specifically, UCAR and subrecipients of Award funding have:

- remained in material compliance with the Award's terms and conditions;

- submitted required programmatic and financial reports;

- coordinated with NOAA staff as required for a cooperative agreement; and

- continued to carry out the project in accordance with NOAA-approved objectives, deliverables, and timelines.

Yet, for the unsupported and conclusory reasons cited in the Termination Notice, many of the efforts to effectuate the original priorities of the Award that are now threatened by NOAA's actions. To be clear, terminating the Award will affect various community programs serving Award priorities and stakeholders across all sectors. For example, the U.S. Carbon Cycle Science Program supported by the Award provides crucial data for policymaking, resource management, and extreme-weather mitigation, vital for managing carbon-related risks and opportunities across public and private sectors. The Operation Climate Variability and Predictability Program ("CLIVAR") supported by the Award conducts research to improve seasonal-to-interannual weather forecasts, providing support across sectors like agriculture, water management, and disaster preparedness, while also fostering policy development and workforce training.

Similarly, Award funding for UCAR's partnership with NOAA's Quantitative Observing System Assessment Program (QOSAP) enhances weather forecasts and early warnings by improving Earth-observing systems, ultimately saving lives and property and supporting economic stability across sectors. Ongoing collaboration with the Climate Prediction Center made possible by the Award delivers essential forecasts and assessments that guide life-saving decisions and protect property across key sectors. Collaborations with the Mid-America Regional Council and NOAA's Climate Services, integrating research into local planning and fostering regional resilience.

Finally, workshops and projects supported by various NOAA programs through the Award advance science and community preparedness, while subawards with institutions and contractors support goals such as sustainable aquaculture, global environmental data sharing and drought monitoring. Notable projects include improving drought early warning systems and understanding rainfall variability, all of which have potential impact across sectors.

4

Docusign Envelope ID: C392027E-5BA0-4C4E-8231-F788236C4179

Mr. Rafael Rivera
January 16, 2026

Notably, prior to the Termination Notice, NOAA has never issued UCAR any notice of noncompliance, need for corrective action, or suspension—or otherwise indicated that the Award was deficient or at risk of termination. Moreover, NOAA failed to provide any evidence or findings in reaching its decision that Award activities failed to align with prior or newly stated agency priorities, despite the real and potential benefits of funded activities.

## II. NOAA's Termination Is Not Authorized Under 2 C.F.R. § 200.340 or the Award Terms

The Termination Notice cites 2 C.F.R. § 200.340 as authority for NOAA's termination of the Award. Properly construed, however, that regulation does not authorize the termination of this Award on the grounds stated.

Section 200.340(b) requires awarding agencies to "clearly and unambiguously specify all termination provisions in the terms and conditions of [an award]." This requirement is central to the Uniform Guidance's purpose of ensuring predictability, fairness, and reliance protection in federal financial assistance. As the Office of Management and Budget ("OMB") explained when promulgating the Uniform Guidance in effect at the time of the Award, recipients must be able to rely on the terms of the Federal award as issued and should not be subject to termination authority that is implied or later inferred rather than expressly stated. 85 Fed. Reg. 49506, 49557–58 (Aug. 13, 2020). OMB reiterated this position in the 2024 revisions to the Uniform Guidance, emphasizing that termination provisions are intended to ensure program effectiveness and clarity—not to allow agencies to rescind awards due to post-award policy shifts unless expressly allowed by the terms of the Award.

The Notice of Award and provisions incorporated in the resulting cooperative agreement contain no clear or unambiguous terms or conditions authorizing NOAA to terminate the Award on the basis that NOAA later determines that funded activities are inconsistent with revised agency priorities, especially those that conflict with the statutory priorities expressed by Congress in authorizing program funding.

Here, NOAA's Termination Notice does not identify any evidence that the project has become ineffective, infeasible, or misaligned with the program goals that NOAA identified and approved at the time it issued the Award. Nor does the Termination Notice identify any clear and unambiguous terms of the resulting cooperative agreement that would allow NOAA to terminate the Award. Instead, the Termination Notice relies on generalized statements regarding agency priorities that are not grounded in the Award's original purpose or the congressional direction authorizing the Award. It relies on priorities that appear to have been developed in a *post hoc* fashion and that are not aligned with authorizing statutes or the agency's own stated mission. In fact, the Department's expressed priority for "applied, commercializable outcomes or private sector collaborations" directly contradicts the intent and purpose of authorizing statutes cited by NOAA at the time of award. Yet, NOAA offers no evidence or findings that the funded activities

Mr. Rafael Rivera
January 16, 2026

fail to meet the newly established priorities considering the potential impact and benefit of funded activities across sectors.

### III.    NOAA Failed to Follow Required Procedures Under 2 C.F.R. § 200.342.

Aside from the lack of substantive authority supporting the Termination Notice, NOAA failed to comply with applicable procedures for the termination of federal funding, rendering the termination procedurally defective. Section 200.342 requires awarding agencies to maintain written procedures for objections, hearings, and appeals and to provide recipients a meaningful opportunity to submit information challenging adverse determinations. 2 C.F.R. § 200.342.

Here, contrary to applicable regulations, NOAA:

- issued an immediately effective termination without providing any evidence that the Award is no longer aligned with agency priorities or congressional mandates;

- provided no advance notice or opportunity to respond;

- failed to identify any process for appeal or reconsideration in the Termination Notice; and

- did not invite or consider information regarding performance, reliance, or corrective action as contemplated by 2 C.F.R. § 200.339.

OMB has emphasized that these procedural protections are essential to fair grants administration and are intended to prevent abrupt or unsupported adverse actions. NOAA's failure to follow these procedures renders the termination procedurally defective.

### IV.    The Termination Is Arbitrary, Capricious, and Contrary to Law Under the APA

Under the Administrative Procedure Act ("APA"), actions taken by an awarding agency must be the product of reasoned decision-making and may not be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A). To satisfy this standard, an agency must examine the relevant data, articulate a satisfactory explanation for its action, and demonstrate a rational connection between the facts found and the decision made based on the administrative record before it. Here, NOAA has not provided any reasoned decision-making based on facts relating to UCAR's performance, a connection to the original Award, or an administrative record related to NOAA's determination.

In awarding the cooperative agreement, NOAA affirmatively determined that the project effectuated agency priorities, warranted funding, and merited a multi-year obligation of federal funds. An agency may not simply ignore those prior findings when reversing course. This is especially true where there are reliance interests created by an award of federal funding, as there are here. OMB has recognized that recipients reasonably rely on the stability of awarded federal assistance when committing personnel, entering contracts, and expending non-federal resources. 85 Fed. Reg. at 49557. NOAA failed to acknowledge, let alone weigh, those reliance interests

6

Docusign Envelope ID: C392027E-5BA0-4C4E-8231-F788236C4179

Mr. Rafael Rivera
January 16, 2026

despite the fact that the Department's sudden and immediate termination affects the work of not only UCAR but a significant number of subrecipients.

## V.    NOAA Failed to Consider Less Drastic Options to Redefine the Award Scope

Finally, the Termination Notice represents arbitrary and capricious agency action because NOAA did not consider alternatives less drastic than eliminating all Award funding. If NOAA believed that UCAR was out of step with applicable law or the Award's terms and conditions, it could have implemented specific conditions under 2 C.F.R. § 200.339, such as requiring additional project monitoring, technical or management assistance, or prior approvals, 2 C.F.R. § 200.208(c). Moreover, even if such specific conditions would not have addressed NOAA's concerns, UCAR would have been and remains willing to collaborate with NOAA and the Department on modifying the Award to redefine CAMP's scope, but NOAA did not consult with UCAR or otherwise contemplate potentially narrowing CAMP activities before immediately terminating the Award.

## VI.    The Termination Conflicts with Congressional Spending Directives

Congress appropriated funds for the program under which this Award was made and directed NOAA to administer those funds consistent with specified statutory purposes. NOAA may not effectively override Congress's spending decisions by terminating awards solely because executive preferences or agency priorities have changed. Such action raises serious Spending Clause and separation-of-powers concerns and should be avoided where, as here, the governing statutory authority for the Award and related federal regulations do not support the asserted basis for termination. *See Washington v. U.S. Dep't of Comm.*, No. C25-1507 MJP, 2025 U.S. Dist. LEXIS 208123, at *30–31 (W.D. Wash. Oct. 22, 2025).

## VII.    Requested Relief

For the reasons described above, UCAR respectfully requests confirmation by January 23, 2026, that NOAA will:

- rescind the Termination Notice;

- reinstate Award No. NA23OAR4310473B; and

- confirm that all obligated funds remain available for expenditure.

Alternatively, UCAR respectfully requests confirmation by the same date that NOAA will rescind the Termination Notice and collaborate with UCAR to redefine the scope of Award and funded activities to align to newly established agency priorities.

## VIII.    Preservation of Rights and Final Agency Action

This appeal and submission is intended to exhaust all available administrative remedies and to provide the Department, through NOAA, a full opportunity to reconsider and correct its decision.

7

Docusign Envelope ID: C392027E-5BA0-4C4E-8231-F788236C4179

Mr. Rafael Rivera
January 16, 2026

Nothing in this appeal should be construed as a waiver of any rights, remedies, or claims available to UCAR at law or in equity.

We respectfully request prompt written confirmation of NOAA's receipt of this appeal and look forward to NOAA's response.

Sincerely,

Signed by:

*Christine Wiedinmyer*

131400D968FE44A...

Christine Wiedinmyer

Director of UCAR Community Programs

Signed by:

ECF63645B642487...

David Doty

UCAR Director of Contracts