## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:26-cv-01061-RBJ

UNIVERSITY CORPORATION FOR ATMOSPHERIC RESEARCH,

     Plaintiff,

v.

NATIONAL SCIENCE FOUNDATION;
BRIAN STONE, in his official capacity as Acting Director of the National Science Foundation;
NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION;
NEIL JACOBS, in his official capacities as Under Secretary of Commerce for Oceans and Atmosphere and Administrator of the National Oceanic and Atmospheric Administration;
UNITED STATES DEPARTMENT OF COMMERCE;
HOWARD LUTNICK, in his official capacity as Secretary of Commerce;
UNITED STATES OFFICE OF MANAGEMENT AND BUDGET, and
RUSSELL VOUGHT, in his official capacity as Director of the United States Office of Management and Budget,

     Defendants.

---

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO SET DEFAULT SCHEDULE TO BRIEF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNTION AND FOR EXPEDITED DISCOVERY

---

## I.    <u>INTRODUCTION</u>

Plaintiff University Corporation for Atmospheric Research (UCAR) has filed a motion for a preliminary injunction to prevent the grave harm that would result if Defendants are permitted to execute their decision to strip UCAR of its stewardship of the NCAR-Wyoming Supercomputing Center (NWSC). *See* Dkt. 18 ("PI Mot."). That harm would not only devastate UCAR but would disrupt weather forecasting and ongoing research projects that advance national security, save countless lives and protect immeasurable property. *See id.* at 11-15; Dkt. 18-3 ¶¶ 14-15, 17-18, 20, 35-38, 42-48.

---

The very "purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held," and preservation routinely demands "haste." *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). Nevertheless, Defendants seek the full 21 days that govern responses to ordinary motions. That timeframe may have been warranted when the parties were still productively negotiating a potential resolution. This past week, however, Defendants (i) rebuffed UCAR's proposal to pause NWSC transfer activities pending resolution of UCAR's preliminary injunction motion; (ii) renewed its request that UCAR provide confidential NWSC information to the University of Wyoming—which Defendants have specifically identified as the likely transferee of UCAR's oversight responsibilities with respect to NWSC; and (iii) submitted a request to Congress in which they propose to cut funding to the National Center for Atmospheric Research (NCAR) by *40%*. Having refused to operate with governmental transparency or due process and having provided no information as to when they will take their next steps to divest UCAR of its stewardship of NWSC, Defendants request to respond to UCAR's preliminary injunction motion within the default timeframe for any ordinary motion is untenable and should be denied. Instead, the Court should grant UCAR's request for a 10-day opposition deadline and a 4-day reply deadline.

## II.    RELEVANT FACTS

Defendants' Motion to Set Default Schedule ("Motion" or "Mot.") paints an incomplete picture. It is true that Kapua Hatch, a Grants and Agreements Officer at the National Science Foundation (NSF), informed UCAR on February 12, 2026 that NSF had "decided to transfer stewardship of the NCAR-Wyoming Supercomputer [sic] Center (NWSC)"—a decision that was made with no administrative process. Dkt. 18-5 at 1; PI Mot. at 7; Mot. at 3. But important

OPPOSITION TO DEFENDANTS' MOTION TO SET DEFAULT BRIEFING SCHEDULE

evidence of Defendants' wrongdoing was also developed thereafter. Most significantly, on March 11, 2026, Defendants extinguished any possible doubt as to the finality of their decision when NSF's Steven Ellis confirmed to UCAR that "[t]his is a decision made," adding that "NSF is putting pressure on us to get this done quickly." Dkt. 18-3 ¶ 32. UCAR filed suit just five days later, on March 16, 2026. Dkt. 1 (Complaint). And in the month between when NSF announced its decision to transfer NWSC stewardship and unequivocally confirmed the finality of that decision, Defendants also continued to take other adverse actions that UCAR challenges, including the imposition and continuation of unconstitutional speech restrictions and pointless informational demands. *See, e.g.*, Compl. ¶¶ 57, 81, 84, 85, 93, 97. UCAR thus did not "wait more than four weeks to file suit." Mot. at 3. In fact, even after UCAR filed suit, Defendants' counsel claimed via email that "no final decision has been made about the NCAR-Wyoming Supercomputing Center." Decl. of Bram M. Alden ("Alden Decl.") ¶ 8, Ex. A at 3. Defendants are thus suggesting in their Motion that UCAR's Complaint was too late while simultaneously suggesting in their correspondence that the Complaint was too early. Neither is true. The reality is that the Complaint was aptly timed to seek relief from an ongoing campaign of retaliation and to defeat the meritless ripeness challenge Defendants have now previewed via email.

The preliminary injunction motion was not untimely either. After UCAR filed its Complaint on March 16, the case was initially assigned to the Honorable Robert E. Blackburn, Dkt. 3, but then reassigned to the Honorable Cyrus Y. Chun on March 17, *see* Dkt. 6. Not knowing who would represent Defendants, UCAR contacted the United States Attorney's Office for the District of Colorado on March 18 and received a response from Defendants' counsel at the Department of Justice (DOJ) on March 19. Alden Decl. ¶¶ 5-6. That same day, March 19, the

OPPOSITION TO DEFENDANTS' MOTION TO SET DEFAULT BRIEFING SCHEDULE

parties conferred and UCAR's counsel alerted Defendants' counsel that UCAR would likely seek a preliminary injunction. *Id.* ¶ 6. Following the parties' conference (and still on March 19), UCAR filed a notice indicating that at least one party did not consent to magistrate judge jurisdiction, Dkt. 10, and the case was reassigned to the Honorable R. Brooke Jackson, Dkt. 12.

Meanwhile, it appeared that Defendants might cease their wrongdoing voluntarily. Immediately after the Complaint was filed, NSF's Ellis and Carrie Black postponed or cancelled March 18 and 19 meetings with UCAR that had been seemingly designed to continue executing the transition of NWSC management. Alden Decl. ¶ 3-4. Viewing this as a positive development, UCAR then spent 12 days attempting to negotiate a resolution that would obviate the need for emergency relief, reducing the burden on the Court. During those 12 days, UCAR's counsel spoke to multiple attorneys at the DOJ. Alden Decl. ¶ 7. Those conversations were initially productive. On March 26, Defendants' counsel "clarif[ied]" the speech restrictions NSF had imposed on UCAR in an effort to ameliorate ongoing First Amendment concerns, and on March 27, UCAR's counsel expressed a "willingness to continue this productive dialogue." Alden Decl., Ex. A at 5-6. In the same email—and believing that NSF had voluntarily paused execution of its NWSC transfer decision—UCAR's counsel informed Defendants' counsel that it intended to file a preliminary injunction motion and ask the Court to impose a three-week deadline on Defendants' response. The next day, March 28, Defendants' counsel proposed a call on March 30, which UCAR's counsel accepted. Alden Decl., Ex. B at 1. On the March 30 call, UCAR's counsel pointed out that NSF had cancelled or postponed meetings with UCAR and asked that Defendants continue to halt further steps to execute the NWSC transfer. Alden Decl. ¶ 11.

OPPOSITION TO DEFENDANTS' MOTION TO SET DEFAULT BRIEFING SCHEDULE

Defendants' counsel committed to take that request back to their supervisors and proposed another meeting for April 1 at 2:30pm Mountain Time, which UCAR accepted. *Id.*

Two days later, however, just ten minutes before the scheduled meeting on April 1, Defendants' counsel emailed UCAR's counsel to say that Defendants would not "self-enjoin" the NWSC transfer and proposed to take the parties' meeting off calendar. Alden Decl. ¶ 13, Ex. A at 3-4. As a result, the parties did not meet and confer. Alden Decl. ¶ 14. Meanwhile, just hours earlier, NSF contacted UCAR to renew Defendants' request that UCAR provide confidential information regarding NWSC to the University of Wyoming, which NSF has specifically identified as the likely transferee of UCAR's rights and responsibilities over NWSC. Alden Decl. ¶ 12, Ex. C; Dkt. 18-6 (email from NSF official "working on the transfer of NWSC activities to UWYO"). That request, coupled with counsel's last-minute cancellation of the parties' April 1 meeting revealed that UCAR could not continue to depend on any voluntary cessation of unlawful transfer activities, rendering a standard motions briefing schedule untenable. Accordingly, UCAR's counsel immediately informed Defendants' counsel that UCAR would file its preliminary injunction on Friday, April 3 and would request that the Court order an expedited briefing schedule and allow narrow discovery requests. *Id.*, Ex. A at 2.

Defendants' counsel responded by asking that UCAR agree to a 28-day response deadline—i.e., even more than the default for ordinary motions. *Id.*, Ex. A at 2. UCAR's counsel tried one more time to obviate the need for urgency, offering to stipulate to a 28-day deadline if Defendants would agree not to take any further action to transfer UCAR's rights and responsibilities with respect to NWSC pending this Court's resolution of the preliminary injunction motion. *Id.* ¶ 16, Ex. A at 1. Defendants did not reply to that offer at all. *Id.* ¶ 16. As a

OPPOSITION TO DEFENDANTS' MOTION TO SET DEFAULT BRIEFING SCHEDULE

result, UCAR's counsel was forced to spend the first (and most important) days of Passover away from his family to complete UCAR's preliminary injunction motion, *id.* ¶ 17, which UCAR filed two days later, on April 3 at 6:42 p.m. Mountain Time, Dkt. 18. UCAR went to extraordinary lengths to file its motion and supporting evidence during the holidays.[1]

Also on April 3, just hours before UCAR filed its preliminary injunction motion, NSF submitted its budget request to Congress. Alden Decl. ¶ 18, Ex. D (excerpt of NSF budget request). Therein, NSF attempts to walk back its final decision with the post-hoc claim that it is "*exploring options* to transfer stewardship of the NCAR-Wyoming Supercomputer [sic] Center "[2] *Id.* at 59. But NSF gives the game away when it enumerates the funding it is seeking from Congress for Fiscal Year 2027: it proposes to cut funding for NCAR by just under *40%*—from $127.6 million in Fiscal Year 2025 to $77 million in Fiscal Year 2027. Ex. D at 61. Such a dramatic cut is necessarily contingent on executing NSF's decision to transfer NWSC operations and maintenance away from UCAR and NCAR.

---

[1] UCAR's brief was not filed "long after the close of business." Mot. 4. UCAR's counsel is in California, where it was 5:42pm at the time of UCAR's filing. The Court is in Mountain Time, where it was just one hour later. Regardless, UCAR filed as soon as practicable and just two days after Defendants' counsel confirmed that Defendants would not agree to a voluntary cessation of NWSC transfer operations.

[2] NSF's verbiage—referring to "stewardship" and inaccurately calling the Supercomput*ing* Center the "Supercomput*er* Center"—is telling. Alden Decl., Ex. D at 59 (emphasis added). That is the same verbiage and same error NSF made when it informed UCAR that it "*has decided* to transfer stewardship of the NCAR-Wyoming Supercomputer [sic] Center." Dkt. 18-5 at 1 (emphasis added). The only thing NSF changed—"exploring options" instead of "has decided"— is transparently designed to undermine this litigation by claiming that the decision is not final.

OPPOSITION TO DEFENDANTS' MOTION TO SET DEFAULT BRIEFING SCHEDULE

### III.    <u>ARGUMENT</u>

Defendants' motion to set the default briefing schedule on UCAR's motion for emergency relief should be denied, and the Court should instead order Defendants to respond to UCAR's motion by April 13 and produce documents responsive to UCAR's narrow requests.

**A.    The Default Briefing Schedule For Ordinary Motions Is Not Appropriate**

Defendants' proposal to brief UCAR's preliminary injunction motion on the default briefing schedule for ordinary motions may have been reasonable when Defendants appeared to have paused their wrongdoing and were engaged in productive negotiations, but it is not reasonable now.

*First*, Defendants themselves have communicated urgency, demanding that UCAR rapidly comply with extensive informational demands to facilitate the NWSC transfer. Dkt. 18-3 ¶ 32. NSF's Ellis explained that "NSF is putting pressure on us to get this done quickly," adding, "I need this information yesterday." *Id.* Meanwhile, a transfer of NWSC maintenance and operations duties could begin at any moment. Defendants' suggestion that it might not be "physically possible" to transfer such duties "within a matter of days," Mot. at 3, betrays an ignorance as to how the NWSC functions and what is at stake here. NWSC operations and maintenance duties include overseeing supercomputing functions on a daily basis; supporting continuous research by building, maintaining, and running supercomputing applications; providing training and consulting services to external users; servicing hardware; network management; and oversight of power distribution, cooling, and complex electrical and mechanical systems. Dkt. 18-3 ¶ 11. NSF could (unlawfully) order a transfer of one or more of these responsibilities at any time. The fact that a partial transfer would necessarily compromise

OPPOSITION TO DEFENDANTS' MOTION TO SET DEFAULT BRIEFING SCHEDULE

the NWSC's "integrated supercomputing ecosystem," *id.* ¶ 13; *see also id.* ¶ 5, 9, 34, is reason to prevent the harm from happening, not to pretend it cannot happen.

The urgency is also, in part, a problem of Defendants' own making. NSF has not provided UCAR or NCAR with any details of how Defendants intend to execute the NWSC transfer. *Id.* ¶ 33. Defendants' counsel compounded the problem by engaging in negotiations to devise a potential resolution before informing UCAR's counsel—ten minutes before their scheduled meeting—that Defendants would not voluntarily postpone any further action to transfer NWSC stewardship. Alden Decl. ¶ A at 3. When UCAR offered to stipulate to a 28-day deadline for Defendants' response provided that Defendants agreed not to take further action to execute the transfer until this Court ruled on UCAR's preliminary injunction motion, Defendants did not respond at all. Alden Decl. ¶ 15, Ex. A at 2.

*Second*, the holiday weekend and vacation plans of Defendants' counsel do not justify delay. UCAR's counsel already worked through Passover to prepare and file its preliminary injunction motion, which, consistent with the Court's rules, is just 15 pages long. Dkt. 18. UCAR informed Defendants' counsel as early as March 19 that it was contemplating a preliminary injunction motion and made clear on March 27 that such a motion would be limited to the transfer of NWSC management. Defendants thus had a week (if not 15 days) to prepare before UCAR filed its motion. They focused, instead, on preparing their request for additional time. Beyond that, although Defendants now represent that two of their attorneys, Marianne Kies and Alexander Severance, are on vacation through Wednesday, April 8, the automated reply UCAR received immediately after filing its preliminary injunction motion listed another attorney,

OPPOSITION TO DEFENDANTS' MOTION TO SET DEFAULT BRIEFING SCHEDULE

Joseph Borson, as the point-of-contact for this matter while Ms. Kies is on vacation. Ex. E. There is no reason Mr. Borson or any other government attorney cannot attend to this matter.

*Third*, UCAR's proposed schedule would afford Ms. Kies and Mr. Severance five days after they return from vacation (April 9, 10, 11, 12, and 13) to work on their opposition. That is the same amount of time the district courts ordered in the precedents UCAR already cited: *Harley's Hope Found. v. Harley's Dream*, 2022 WL 824415, at *1 (D. Colo. Mar. 18, 2022); *Core Progression Franchise LLC v. O'Hare*, 2021 WL 1329024, at *2 (D. Colo. Mar. 10, 2021). Other cases have permitted even less. *See, e.g.*, *Colorado v. DeJoy*, 487 F. Supp. 3d 1061, 1067 (D. Colo. 2020) (construing portion of application for temporary restraining order as preliminary injunction motion and ordering federal government to respond by noon three calendar days later). And the Tenth Circuit has held that a district court does not abuse its discretion by holding a preliminary injunction hearing just three days (one business day) after a plaintiff files its motion for injunctive relief. *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1153 (10th Cir. 2001). There is simply no reason the federal government cannot file a 15-page responsive brief by April 13.

## B.     Defendants Should Be Ordered to Respond to Narrow Document Requests

Defendants should also be ordered to respond to UCAR's narrow proposed discovery requests by April 13.

*First*, Defendants do not, and cannot, dispute that this Court exercises "'broad discretion'" to permit early discovery in support of a preliminary injunction motion. Dkt. 19 at 4 (quoting *Qwest Commc'ns Int'l, Inc. v. WorldQuest Networks, Inc.*, 213 F.R.D. 418, 419 (D. Colo. 2003)). Nor can Defendants dispute that UCAR need only show "good cause" to permit

such discovery. *Id.* at *419; *see also Sirio v. Stancil*, 2026 WL 184583, at *1 (D. Colo. Jan. 23, 2026) (granting early discovery); *Touchstone Life Essentials, Inc. v. Healed LLC*, 2025 WL 1580636, at *1 (D. Colo. Mar. 6, 2025) (same). UCAR is not seeking early discovery "to meet its burden of proof," Mot. 4, but to strengthen its showing, *see* Dkt. 19 at 4 ("Such evidence will *corroborate* that UCAR is likely to succeed[.]" (emphasis added).). Furthermore, UCAR filed its request for expedited discovery "immediately upon filing" its motion for a "preliminary injunction," and without early discovery of internal correspondence between NSF officials involved in the transfer of NWSC stewardship, it would be "unusually difficult or impossible" for UCAR to present a complete record of the unconstitutional motivation underlying the challenged decision. *Colo. Mont. Wyo. State Area Conference of the NAACP v. U.S. Election Integrity Plan*, 2022 WL 1443057, at *2 (D. Colo. May 6, 2022). Although UCAR has already served FOIA requests, *see* Alden Decl. ¶ 12, there is no likelihood that Defendants will respond before resolution of UCAR's preliminary injunction motion.

*Second*, Defendants exaggerate the burden and scope of UCAR's requests. UCAR seeks just two narrow categories of documents and communications "sent or received" by just three custodians during a period of just over four months. Dkt. 19 at 5. There is no reason each of those three custodians would be unable to devote the short amount of time it would take to search four months of their emails and electronic communications for documents regarding the NWSC transfer to the University of Wyoming. *See id.* Indeed, each custodian should only need to search for just a handful of terms—"NCAR," "UCAR," "NWSC," "Wyoming," and "UWYO" would likely suffice. UCAR is willing to stipulate to limit its early discovery requests to just those five keywords if necessary to reduce any alleged burden.

OPPOSITION TO DEFENDANTS' MOTION TO SET DEFAULT BRIEFING SCHEDULE

*Third*, Defendants' observation that "APA claims are reviewed on an administrative record," Mot. at 5, fails to appreciate that UCAR merely seeks early access to portions of that record. The three custodians from whom UCAR seeks evidence are all key players in the NWSC transfer: Kapua Hatch sent the February 12 email announcing the transfer, Dkt. 18-5, Steven Ellis wrote on February 23 that he was "backing up Carrie Black on oversight and working on the transfer of NWSC activities to UWYO," Dkt. 18-6, and Ellis definitively confirmed the transfer at the March 11 meeting, Dkt. 18-3 ¶ 32. These custodians' communications regarding the transfer should be part of "the whole record" that this Court reviews to determine whether Defendants complied with the APA. 5 U.S.C. § 706. And the "relevance," of their communications with the University of Wyoming during the past four months, Mot. at 5, is self-evident: the University of Wyoming (or "UWYO") is one of NCAR's partners in the NWSC, Dkt. 18-3 ¶ 6, and the only third party Defendants have identified as a potential transferee of UCAR and NCAR's rights and responsibilities with respect to the NWSC, Dkt. 18-6 at 1.[3]

---

[3] To the extent NWSC-related communications sent or received by Hatch, Ellis, or Black somehow fall outside the administrative record, they should be produced under any of the following exceptions: "the agency action is not adequately explained and cannot be reviewed properly without considering the cited materials"; "the record is deficient, because the agency ignored relevant factors it should have considered in making its decision"; "the agency considered factors that were left out of the formal record"; "the evidence coming into existence after the agency acted demonstrates that the actions were right or wrong"; or "there is a 'strong showing of bad faith or improper behavior.'" *Citizens for Alternatives to Radioactive Dumping v. U.S. Dep't of Energy*, 485 F.3d 1091, 1096 (10th Cir. 2007); *Am. Min. Congress v. Thomas*, 772 F.2d 617, 626 (10th Cir. 1985). To the extent Defendants attempt to assert the deliberative process privilege, it protects only documents that are "both predecisional and deliberative," *Trentadue v. Integrity Comm.*, 501 F.3d 1215, 1227 (10th Cir. 2007), and can be overcome by "any evidence, including circumstantial evidence, of illegal motive," *Denver First Church of Nazarene v. Cherry Hills Vill.*, 2006 WL 7354733, at *6 (D. Colo. Jul. 19, 2006).

OPPOSITION TO DEFENDANTS' MOTION TO SET DEFAULT BRIEFING SCHEDULE

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, UCAR respectfully requests that the Court deny Defendants' motion and instead order that (1) Defendants must file their response to UCAR's preliminary injunction motion on or before April 13, 2026; (2) Defendants must produce documents responsive to UCAR's two requests on or before April 13, 2026; (3) UCAR must file its reply in support of its preliminary injunction motion on or before April 17, 2026; and (4) a hearing on UCAR's preliminary injunction motion is set for April 27, 2026, or as soon thereafter as the Court's calendar permits.

Dated:  April 5, 2026                                  HUESTON HENNIGAN LLP


By:    */s/ Bram M. Alden*
Michael M. Purpura
Bram M. Alden
Emilie A. Miner
Austin P. Reagan
620 Newport Center Dr., Suite 1300
Newport Beach, CA 92660
Telephone: (949) 432-6906
mpurpura@hueston.com
balden@hueston.com
eminer@hueston.com
areagan@hueston.com

OPPOSITION TO DEFENDANTS' MOTION TO SET DEFAULT BRIEFING SCHEDULE