# EXHIBIT 3



ORIGINAL

## NCAR-Wyoming Supercomputing Center
## Memorandum of Understanding

This Memorandum of Understanding ("Agreement"), dated *30 April*, 2010, by and between the University Corporation for Atmospheric Research (UCAR), manager of the National Center for Atmospheric Research (NCAR), located at 1850 Table Mesa Drive, Boulder, Colorado 80305, and the "Wyoming Parties" (as defined below), sets forth the primary roles and responsibilities between the parties with regard to their collaboration to build and operate the NCAR-Wyoming Supercomputing Center ("NWSC"), a high performance computing center to be located in Cheyenne, Wyoming.

### I. Background.

A. UCAR operates and manages NCAR under a Cooperative Agreement with the National Science Foundation (NSF). NCAR is the NSF's federally funded research and development center (FFRDC) devoted to research, service, and education in the atmospheric and related sciences. Consistent with the NSF strategic goals of supporting basic research at the frontiers of discovery, and science and engineering education at all levels, UCAR is pursuing the establishment of a supercomputing center that will be available to the atmospheric and related geosciences community. The construction of this center presents an unprecedented opportunity to make transformative advancements in computing capability for the atmospheric and related sciences.

B. UCAR has managed NCAR for 50 years under a series of agreements with the NSF. UCAR's current Cooperative Agreement with NSF will expire on 30 September 2013, although NSF may extend the agreement for an additional term of five years at its sole discretion. It is important to UCAR and NSF that the structure and management of the NWSC be established in a manner that allows for the smooth transition to a different NCAR manager, if necessary. Given NSF's continuing sponsorship of NCAR and its ongoing funding for the NWSC, NSF will have unconditional access to the equipment and the center.

C. In order to leverage existing and future resources, a number of entities have come together in the State of Wyoming to provide various resources to make the construction of the NWSC possible. These "Wyoming Parties" are:

1. The University of Wyoming (UW), 1000 E. University Ave. Laramie, WY 82071
2. Cheyenne LEADS, 121 West 15th Street, Cheyenne, WY 82001
3. The State of Wyoming through the Wyoming Business Council, 214 West 15th Street, Cheyenne, WY 82002
4. Cheyenne Light, Fuel & Power Company, 108 West 18th Street, Cheyenne, WY 82001

D. Overall, the Wyoming Parties have committed to contribute and make funds available for the construction and operation of the NWSC, as well as for high performance computing hardware to be housed in the center, in order to provide world-class

Page 2  of 9

computational capability to the national atmospheric and related geosciences community, at reasonable cost. The supercomputing equipment funded via the NSF Cooperative Agreement and the Wyoming Parties' contributions contemplated in this Agreement will be owned by the NSF, who will also provide oversight of the management and operation of these computing resources under the terms of the NSF Cooperative Agreement.

E. UCAR and the Wyoming Parties wish to set forth an understanding of each party's roles and responsibilities through this Agreement. All parties acknowledge that there are many contingencies and conditions precedent (such as NSF approval) associated with these initial steps and responsibilities, and that further agreements will need to be executed.

II. Roles and Responsibilities.

Because of the numerous parties and diverse areas that will need to be addressed in order to move forward with the NWSC, the following outline provides a framework to identify the roles and responsibilities of the parties.

A.  University of Wyoming

1. Funding. UW will provide $1 million to UCAR, or any successor manager of NCAR (see paragraph II.F.1 below), on an annual basis, starting in the Wyoming fiscal year in which final NSF approval is granted, and for nineteen (19) years thereafter, so long as the NWSC is in operation as an NSF-sponsored facility. If the NWSC is still in operation after that twenty (20) year period the parties agree to negotiate in good faith regarding UW continuing to provide funding.

2. EPSCoR Funds. UW will undertake its best efforts to obtain EPSCoR funds for the NWSC to be used to support, among other things, center operational expenses, near-term computing augmentation, and the overall optimization of scientific productivity.

3. Intellectual Collaborations. UW agrees to work with UCAR to jointly pursue and develop mutually beneficial opportunities for intellectual collaboration and exchange, including joint appointments, scientific and/or faculty visitor positions, and other mechanisms designed to effectively support and develop such collaborations.

4. Other University and Research Collaborations. UW agrees to work with UCAR on further collaborations with other academic and research institutions, to provide scientific, research and computing opportunities.

5. Computing Resources. UW agrees and recognizes that the computing resources to be provided at the NWSC will belong to the federal government (the National Science Foundation) and are contingent on annual funding and congressional appropriations in any given year. Computing resources allocated to the NCAR/UW alliance are expected to be equivalent to twenty percent (20%) of the capacity of the NSF base-funded supercomputer resources. All such computing resource allocations shall be subject to NSF approval and shall be consistent with paragraph II.B.1.(iv) of this Agreement. For NSF-funded equipment and projects, the terms and conditions of the NSF Cooperative Agreement shall apply, including the restriction on classified work and

NCAR-Wyoming Supercomputing Center
Memorandum of Understanding

Confidential                    NSF_AR_00004201

Page 3 of 9

the need for open availability of data and codes. NSF base-funded supercomputing resources does not include supercomputing equipment purchased with funds from non-NSF sources and computing capacity funded separately by NSF for special purposes, such as the Climate Simulation Laboratory (CSL), the TeraGrid and the Antarctic WRF Mesoscale Prediction System (AMPS).

B.  Wyoming Business Council.

1.  Funding.  Except as otherwise provided in paragraph II.G, the Wyoming Business Council will contribute $20 million toward the construction and operation of the NWSC. The required payment will be provided as a lump sum cash payment pursuant to the following conditions of release stipulated by the Wyoming Legislature:

(i) UCAR secures authorization and funding from the National Science Foundation to locate the NWSC in Wyoming (see paragraph II.E.1 below);

(ii) A confirmation from a utility company that it will provide all necessary electrical infrastructure for the operation of the NWSC pursuant to its tariffs and the laws, rules and regulations of the State of Wyoming and Public Service Commission (see paragraph II.D.1 below);

(iii) Necessary real property in Wyoming suitable to UCAR and UW is secured for location of the NWSC (see paragraph II.C.1 below);

(iv) UCAR, UW and the Wyoming Business Council have entered into a final contract delineating access to the capacity of the supercomputer housed within the NWSC (see paragraph II.E.5 below);

(v) UCAR, UW and the Wyoming Business Council have entered into a final contract regarding the location and construction of a building to house the supercomputing equipment (see paragraph II.E.2 below);

2.  Site Specific Investment.  The Wyoming Business Council agrees to work with the appropriate City, County, or Joint Powers Boards to apply under the Business Ready Community Program for up to $4.5 million in funds to support site infrastructure needs, including funds for roadways, sewer and water connections, and fiber optic connectivity.

3.  Environmental Stewardship.   The Wyoming Business Council agrees to promote environmentally responsible practices in the provision of infrastructure needs for the NWSC site.

C.  Cheyenne LEADS.

1. Real Property.  Cheyenne LEADS will agree to transfer title to UCAR or to hold in trust or escrow for UCAR or the successor manager of NCAR, as designated by NSF, approximately 24 acres of land located at North Range Business Park, Block 2, lots 3 and 4, Cheyenne, Wyoming, or such other lots in the Business Park as may be mutually agreed to by UCAR and Cheyenne LEADS, at $0 cost to UCAR or such designee as UCAR or the NSF directs.  Cheyenne LEADS will agree to convey to UCAR good and marketable title to the Real Property on the date of closing, the date to be determined as mutually agreed, by a Special Warranty Deed acceptable to UCAR.  The Parties will enter into a formal Contract for Purchase and Sale of the Real Property, to be drafted and provided by Cheyenne LEADS, who shall furnish an ALTA Owners Policy, existing

NCAR-Wyoming Supercomputing Center<br>Memorandum of Understanding

Confidential                                                       NSF_AR_00004202

Page 4 of 9

environmental assessments and also cover filing and recording costs and closing fees. Cheyenne LEADS agrees to cooperate with UCAR and/or NSF with regard to any environmental assessments or impact studies. Cheyenne LEADS will agree to also provide UCAR with all site documentation (existing survey reports, topographic maps, soil study results, etc.) required for site assessment during the project design phase.

2. Development Ready. Cheyenne LEADS, not UCAR/NCAR, will agree to be responsible for providing the site in development-ready condition, by providing roads, water and sewer. Once UCAR/NCAR has identified its site-specific fiber optic connectivity needs, Cheyenne LEADS agrees to work with NCAR/UCAR, fiber providers and the Wyoming Business Council to develop the requisite fiber capacity to the site. Where appropriate, Cheyenne LEADS agrees to apply for or assist NCAR/UCAR in applying for all permits necessary for site infrastructure, development and construction. It is the intention of the Parties that any additional infrastructure development to bring the site to fully development-ready status will be funded through Business Ready Communities Grants earmarked for this project by the Wyoming Business Council.

D. Cheyenne Light, Fuel & Power Company.

1. Electric Service. Cheyenne Light, Fuel & Power Company will provide primary voltage electric service and primary voltage metering for permanent facilities and secondary voltage electric service and metering for temporary construction power for the NWSC to be located at the North Range Business Park. For the projected initial permanent electrical load of 8 MW, Cheyenne Light Fuel & Power Company will provide energy service pursuant to the applicable rate schedule found in the Company's tariffs and pursuant to the laws, rules and regulations of the State of Wyoming and Public Service Commission. Cheyenne Light Fuel & Power Company will provide a line extension and other facilities to extend power to the NWSC site at $0 cost to UCAR. If a second reserved, redundant source of electric power is required, Cheyenne Light Fuel & Power will bill UCAR or the successor manager of NCAR (see paragraph II.F.1 below) the appropriate monthly charge for reserving that capacity pursuant to the regulations.

2. Expansion and Capacity. When the NWSC's long term electrical load is projected to necessitate additional Cheyenne Light, Fuel & Power Company electrical system infrastructure , Cheyenne Light, Fuel & Power Company agrees to provide the substation power supply by installing the appropriate sized substation transformer at an existing facility or building a new substation on the NWSC site to handle the projected load of 24 MW at $0 cost to UCAR..

3. Renewable Energy. Cheyenne Light, Fuel & Power Company agrees to make a commitment to using a minimum of ten percent (10 %) renewable energy in the provision of services to the NWSC. This requirement will initially be met with power generated from the wind farm located on Happy Jack Road or other renewable sources. The percentage of renewable energy for the NWSC site is anticipated to increase over time as CLF&P's capacity in renewable energy expands. Any deviations from approved Cheyenne Light, Fuel & Power Company tariffs for the provision of services to the NWSC must be approved by the Wyoming Public Service Commission.

NCAR-Wyoming Supercomputing Center
Memorandum of Understanding

Confidential

NSF_AR_00004203

Page 5 of 9

E.  UCAR.

1.  NSF Approval.  The NWSC cannot proceed without NSF approval, which it may grant at its sole discretion.  UCAR is responsible for seeking all required authorizations for the NWSC from NSF.

2.  Construction of Center.  Subject to NSF's approval of the project, UCAR will construct the NWSC at the North Range Business Park. Title to the NWSC, including the land, shall be held by UCAR, or its designee or successor as manager of NCAR, subject to the provisions of paragraph II.F.2 below.  UCAR, with NSF oversight, shall retain sole responsibility and authority for operating the NWSC once it is constructed.

3.  Project Management.  UCAR will agree to provide overall project management for the NWSC construction effort.  UCAR shall have complete design and project management control, contracting authority and construction responsibility for the NWSC.

4.  Environmental Compliance/Stewardship.  UCAR agrees to ensure compliance with all applicable environmental federal and state laws and regulations to promote environmentally responsible practices in the design, planning and construction of the NWSC.

5.  Allocation of Computing Resources.  UCAR agrees to work with UW and NSF on a joint process, including governance and a framework, to allocate the computing resources that are to be made available to the NCAR/UW alliance in any given year.

6.  Intellectual Collaborations.  UCAR agrees to work with UW to jointly pursue and develop mutually beneficial opportunities for intellectual collaboration and exchange, including joint appointments, scientific and/or faculty visitor positions, and other mechanisms designed to effectively support and develop such collaborations.

7. Other Collaborations.  UCAR agrees to work with UW and other academic and research institutions on science, engineering and computing collaborations related to the NWSC.

F.  Successor Management and Ownership

1. Successor Management of NCAR.  Should UCAR discontinue as the manager of NCAR, the Wyoming Parties agree to negotiate in good faith with the successor organization that operates and manages NCAR to provide the same terms for the NWSC.

2. Ownership.  During construction, UCAR will hold title to the land and facility. NSF will make the final determination regarding who will hold title to the NWSC, including the land. Should NSF permit UCAR to hold title as the manager of NCAR then title to the NWSC, including the land, shall be vested in UCAR, or its designee or successor as manager of NCAR, subject to the provisions of paragraph II.F.3 below. Should NSF direct transfer of the title to UW then title to the NWSC, including the land, shall be transferred to UW as set forth below.

3. Ownership Transfer.  Should NSF discontinue funding to UCAR to support the operation of the NWSC, or at any time should NSF direct UCAR to transfer ownership to UW, then UCAR and UW shall take the following actions:

NCAR-Wyoming Supercomputing Center
Memorandum of Understanding

Confidential                                                                    NSF_AR_00004204

Page 6 of 9

a. UW shall take ownership of the NWSC as specified in a purchase/transfer agreement between UW and UCAR.

b. UCAR shall give the Wyoming Parties written notice of NSF's election to discontinue funding one year prior to the date on which funding will be discontinued, or as soon as possible after notification from NSF.

c. In the event NSF continues to fund the operation of the NWSC but directs UCAR to transfer title to UW, then UCAR and UW shall enter into either a lease agreement or a use agreement specifying the terms under which NCAR will continue to use and operate the facility under UW ownership.

d. Upon satisfaction of the conditions in Paragraph F.3.c. above, UCAR and UW will execute all necessary documents to effect the transfer of title to the land, building and all associated electrical and mechanical equipment to UW. Upon transfer of title, UCAR will be relieved of any further financial obligations associated with the construction or operation of the NWSC, unless as otherwise specified in the use/lease agreement between UCAR and UW. In the event NSF ceases to support the ongoing operation of the NWSC, equipment acquired with Federal funds and titled with the Federal government, such as supercomputers, mass storage systems, etc., will not be transferred to UW under this contingency clause. However, should NCAR no longer have a need for the government furnished equipment, UCAR agrees to seek NSF approval for UW to assume title.

G. Design of Center

1. UW has entered into an agreement with UCAR on a sole source basis under which UCAR has selected an architectural and engineering firm to design the NWSC.

2. In the agreement, UW has committed to an amount not to exceed $4,250,000 to fund the design work, which is subject to NSF review and approval. The amount of the lump sum payment contemplated under paragraph II.B.1 of this Agreement will be accordingly reduced by the amount actually expended for the design work.

3. UW will own the work product resulting from the design agreement, but will provide UCAR an exclusive license to use the work product for construction of the NWSC, upon execution of the required agreements and approvals in paragraph II.B.1 of this Agreement.

4. UCAR will commit to an amount not to exceed $4,700,000 from NSF to be expended by UCAR for project management. All anticipated funding from NSF is subject to availability of funds. Nothing in this MOU may be construed to obligate NSF to any current or future expenditure of resources in advance of the availability of appropriations, nor does this MOU obligate NSF to spend funds on any particular project or purpose, even if those funds are available.

H. Partnership Governance Board

A Partnership Governance Board (PGB) will be established to provide overall management review and guidance for NWSC construction and operation and for

NCAR-Wyoming Supercomputing Center
Memorandum of Understanding

Confidential

NSF_AR_00004205

Page 7 of 9

affiliated intellectual collaborations between NCAR, UCAR, and UW. The
responsibilities of the PGB summarized as follows:

- Monitoring the process of NWSC development and operation;
- Reviewing and approving, along with NSF, the Project Execution Plan for
  NWSC construction;
- Reviewing and recommending whether additional entities should be admitted as
  an NWSC facility partner; and
- Reviewing and approving plans for specific intellectual collaborations between
  NCAR, UCAR, and UW (e.g., proposed joint appointments, joint research
  initiatives, etc.).

The PGB is comprised of representatives of NCAR and UW, with equal
representation from each entity. Members include the UW Vice President for Research
and Economic Development, the UW Vice President for Academic Affairs, the NCAR
Director, and the NCAR/CISL Director. The PGB reports to the UCAR President.
Established at the initiation of the NCAR-Wyoming partnership, the PGB will persist
throughout construction and operation of the NWSC. In order to fulfill its obligations,
the PGB will meet semi-annually beginning in June 2010, or more often as needed
thereafter. These meetings may be face-to-face or teleconference/videoconference call
format.

To assist in the oversight of the design and construction of the NWSC, the PGB
will form an NWSC Oversight Committee (NOC). The charge of the NOC is to provide
independent oversight, guidance, and community input during the planning, development
and construction phases of the NWSC project. The committee in doing its work will draw
on expertise in the areas of construction, sustainable design, large project management,
business opportunity development in the technology sector, and high performance
computing (HPC) facility operations. The NOC will consider all aspects of the project
and from time to time may focus on specific details as identified by its members, NCAR
or UW.

Miscellaneous.

A. This Agreement is a preliminary understanding of the roles and responsibilities, and
the parties anticipate further agreements to be negotiated between the individual parties
on the specific issues outlined above. This Agreement does not involve the exchange of
funds and may be terminated at any time by notice of one party to any of the other
parties.

B. Only contracts that involve the State of Wyoming shall be reviewed and approved by
the Governor and the Attorney General for Wyoming.

C. The parties will hold each other's identified propriety or confidential information in
trust and confidence and protect such information from unauthorized use or disclosure.
The parties will not disclose, publish, divulge or release such information or knowledge,

NCAR-Wyoming Supercomputing Center
Memorandum of Understanding

Page 8 of 9

except as necessary to do so in the performance of the responsibilities described in this Agreement. The parties will not engage in any personal or professional activity, or enter into any financial transaction, that involves, or appears to involve, the direct or indirect use of proprietary or confidential information to further a private or competitive business gain. Notwithstanding anything herein to the contrary, UCAR understands and agrees that all understandings hereunder of the University of Wyoming and Wyoming Business Council on behalf of the State of Wyoming are subject to its duties and obligations pursuant to the Wyoming's Public Records Act, Wyo. Stat. §16-4-201 et seq. Notwithstanding anything herein to the contrary, UCAR agrees that it will make no claim against the State of Wyoming or the Wyoming Business Council if the State of Wyoming or the Wyoming Business Council makes available to the public any report or notice or other information it receives from UCAR.

D. Nothing in this Agreement should be interpreted as a legal partnership or joint venture.

E. Notwithstanding anything herein to the contrary, the State of Wyoming, the University of Wyoming, and the Wyoming Business Council reserve all immunities, defenses, rights or actions arising out of or under the Eleventh Amendment to the U.S. Constitution and Wyo. Stat. § 1-39-104(a) and no waiver of any such immunities, defenses, rights or actions shall be implied or otherwise deemed to exist by reason of the entry of the State of Wyoming or the Wyoming Business Council into this Agreement, or any agreement related hereto, by any express or implied provision hereof, or by any act or omissions to act by any representative of the State of Wyoming, whether taken pursuant to this Agreement with UCAR or prior to execution hereof.

F. NSF is not a party to this MOU and nothing in this MOU gives the parties any right of action against NSF.


Understood and Agreed to By:

The University Corporation for Atmospheric Research

Richard Anthes
President


Office of Wyoming Governor



Dave Freudenthal
Governor

NSF_AR_00004207

Page 8 of 9

except as necessary to do so in the performance of the responsibilities described in this Agreement. The parties will not engage in any personal or professional activity, or enter into any financial transaction, that involves, or appears to involve, the direct or indirect use of proprietary or confidential information to further a private or competitive business gain. Notwithstanding anything herein to the contrary, UCAR understands and agrees that all understandings hereunder of the University of Wyoming and Wyoming Business Council on behalf of the State of Wyoming are subject to its duties and obligations pursuant to the Wyoming's Public Records Act, Wyo. Stat. §16-4-201 et seq. Notwithstanding anything herein to the contrary, UCAR agrees that it will make no claim against the State of Wyoming or the Wyoming Business Council if the State of Wyoming or the Wyoming Business Council makes available to the public any report or notice or other information it receives from UCAR.

D. Nothing in this Agreement should be interpreted as a legal partnership or joint venture.

E. Notwithstanding anything herein to the contrary, the State of Wyoming, the University of Wyoming, and the Wyoming Business Council reserve all immunities, defenses, rights or actions arising out of or under the Eleventh Amendment to the U.S. Constitution and Wyo. Stat. § 1-39-104(a) and no waiver of any such immunities, defenses, rights or actions shall be implied or otherwise deemed to exist by reason of the entry of the State of Wyoming or the Wyoming Business Council into this Agreement, or any agreement related hereto, by any express or implied provision hereof, or by any act or omissions to act by any representative of the State of Wyoming, whether taken pursuant to this Agreement with UCAR or prior to execution hereof.

F. NSF is not a party to this MOU and nothing in this MOU gives the parties any right of action against NSF.

Understood and Agreed to By:

The University Corporation for Atmospheric Research

---

Richard Anthes
President

Office of Wyoming Governor

Dave Freudenthal
Governor

NCAR-Wyoming Supercomputing Center
Memorandum of Understanding

Confidential    NSF_AR_00004208

Page 9 of 9

Wyoming Attorney General's Office

_Donald Gerstein_ #59599 4/29/10

Donald Gerstein
Senior Assistant Attorney General

The Wyoming Business Council

_Robert Jensen_ 4-29-10

Robert Jensen
CEO

The University of Wyoming

_____

Douglas H. Vinzant
Vice President for Administration

Cheyenne LEADS

_____

Randy D. Bruns
CEO

Cheyenne Light, Fuel & Power Company

_____

David R. Emery
Chairman and CEO

NCAR-Wyoming Supercomputing Center
Memorandum of Understanding

Confidential

NSF_AR_00004209

Page 9 of 9

Wyoming Attorney General's Office

_____
Donald Gerstein
Senior Assistant Attorney General

The Wyoming Business Council

_____
Robert Jensen
CEO

The University of Wyoming

_____
Douglas H. Vinzant
Vice President for Administration

Cheyenne LEADS

_____
Randy D. Bruns
CEO

Cheyenne Light, Fuel & Power Company

_____
David R. Emery
Chairman and CEO

Confidential

NSF_AR_00004210

Page 9 of 9

Wyoming Attorney General's Office

_____
Donald Gerstein
Senior Assistant Attorney General

The Wyoming Business Council

_____
Robert Jensen
CEO

The University of Wyoming

_____
Douglas H. Vinzant
Vice President for Administration

Cheyenne LEADS

_____
Randy D. Bruns
CEO

Cheyenne Light, Fuel & Power Company

_____
David R. Emery
Chairman and CEO

Confidential

NSF_AR_00004211

Page 9 of 9

Wyoming Attorney General's Office

_____

Donald Gerstein
Senior Assistant Attorney General

The Wyoming Business Council

_____

Robert Jensen
CEO

The University of Wyoming

_____

Douglas H. Vinzant
Vice President for Administration

Cheyenne LEADS

_____

Randy D. Bruns
CEO

Cheyenne Light, Fuel & Power Company

_____

David R. Emery
Chairman and CEO

Confidential

NSF_AR_00004212



## NCAR-Wyoming Supercomputing Center
## Memorandum of Understanding

This Memorandum of Understanding ("Agreement"), dated *30 April*, 2010, by and between the University Corporation for Atmospheric Research (UCAR), manager of the National Center for Atmospheric Research (NCAR), located at 1850 Table Mesa Drive, Boulder, Colorado 80305, and the "Wyoming Parties" (as defined below), sets forth the primary roles and responsibilities between the parties with regard to their collaboration to build and operate the NCAR-Wyoming Supercomputing Center ("NWSC"), a high performance computing center to be located in Cheyenne, Wyoming.

### I.  Background.

A. UCAR operates and manages NCAR under a Cooperative Agreement with the National Science Foundation (NSF).  NCAR is the NSF's federally funded research and development center (FFRDC) devoted to research, service, and education in the atmospheric and related sciences. Consistent with the NSF strategic goals of supporting basic research at the frontiers of discovery, and science and engineering education at all levels, UCAR is pursuing the establishment of a supercomputing center that will be available to the atmospheric and related geosciences community.  The construction of this center presents an unprecedented opportunity to make transformative advancements in computing capability for the atmospheric and related sciences.

B. UCAR has managed NCAR for 50 years under a series of agreements with the NSF. UCAR's current Cooperative Agreement with NSF will expire on 30 September 2013, although NSF may extend the agreement for an additional term of five years at its sole discretion.   It is important to UCAR and NSF that the structure and management of the NWSC be established in a manner that allows for the smooth transition to a different NCAR manager, if necessary.  Given NSF's continuing sponsorship of NCAR and its ongoing funding for the NWSC, NSF will have unconditional access to the equipment and the center.

C.  In order to leverage existing and future resources, a number of entities have come together in the State of Wyoming to provide various resources to make the construction of the NWSC possible.  These "Wyoming Parties" are:

1. The University of Wyoming (UW), 1000 E. University Ave. Laramie, WY 82071
2. Cheyenne LEADS, 121 West 15th Street, Cheyenne, WY 82001
3. The State of Wyoming through the Wyoming Business Council, 214 West 15th Street, Cheyenne, WY 82002
4. Cheyenne Light, Fuel & Power Company, 108 West 18th Street, Cheyenne, WY 82001

D.  Overall, the Wyoming Parties have committed to contribute and make funds available for the construction and operation of the NWSC, as well as for high performance computing hardware to be housed in the center, in order to provide world-class

Confidential

Page 2 of 9

computational capability to the national atmospheric and related geosciences community, at reasonable cost. The supercomputing equipment funded via the NSF Cooperative Agreement and the Wyoming Parties' contributions contemplated in this Agreement will be owned by the NSF, who will also provide oversight of the management and operation of these computing resources under the terms of the NSF Cooperative Agreement.

E. UCAR and the Wyoming Parties wish to set forth an understanding of each party's roles and responsibilities through this Agreement. All parties acknowledge that there are many contingencies and conditions precedent (such as NSF approval) associated with these initial steps and responsibilities, and that further agreements will need to be executed.

II. Roles and Responsibilities.

Because of the numerous parties and diverse areas that will need to be addressed in order to move forward with the NWSC, the following outline provides a framework to identify the roles and responsibilities of the parties.

A. University of Wyoming

1. Funding. UW will provide $1 million to UCAR, or any successor manager of NCAR (see paragraph II.F.1 below), on an annual basis, starting in the Wyoming fiscal year in which final NSF approval is granted, and for nineteen (19) years thereafter, so long as the NWSC is in operation as an NSF-sponsored facility. If the NWSC is still in operation after that twenty (20) year period the parties agree to negotiate in good faith regarding UW continuing to provide funding.

2. EPSCoR Funds. UW will undertake its best efforts to obtain EPSCoR funds for the NWSC to be used to support, among other things, center operational expenses, near-term computing augmentation, and the overall optimization of scientific productivity.

3. Intellectual Collaborations. UW agrees to work with UCAR to jointly pursue and develop mutually beneficial opportunities for intellectual collaboration and exchange, including joint appointments, scientific and/or faculty visitor positions, and other mechanisms designed to effectively support and develop such collaborations.

4. Other University and Research Collaborations. UW agrees to work with UCAR on further collaborations with other academic and research institutions, to provide scientific, research and computing opportunities.

5. Computing Resources. UW agrees and recognizes that the computing resources to be provided at the NWSC will belong to the federal government (the National Science Foundation) and are contingent on annual funding and congressional appropriations in any given year. Computing resources allocated to the NCAR/UW alliance are expected to be equivalent to twenty percent (20%) of the capacity of the NSF base-funded supercomputer resources. All such computing resource allocations shall be subject to NSF approval and shall be consistent with paragraph II.B.1.(iv) of this Agreement. For NSF-funded equipment and projects, the terms and conditions of the NSF Cooperative Agreement shall apply, including the restriction on classified work and

NCAR-Wyoming Supercomputing Center<br>Memorandum of Understanding

Confidential                    NSF_AR_00004214

Page 3 of 9

the need for open availability of data and codes. NSF base-funded supercomputing resources does not include supercomputing equipment purchased with funds from non-NSF sources and computing capacity funded separately by NSF for special purposes, such as the Climate Simulation Laboratory (CSL), the TeraGrid and the Antarctic WRF Mesoscale Prediction System (AMPS).

B.  Wyoming Business Council.

1. Funding.  Except as otherwise provided in paragraph II.G, the Wyoming Business Council will contribute $20 million toward the construction and operation of the NWSC. The required payment will be provided as a lump sum cash payment pursuant to the following conditions of release stipulated by the Wyoming Legislature:

(i) UCAR secures authorization and funding from the National Science Foundation to locate the NWSC in Wyoming (see paragraph II.E.1 below);

(ii) A confirmation from a utility company that it will provide all necessary electrical infrastructure for the operation of the NWSC pursuant to its tariffs and the laws, rules and regulations of the State of Wyoming and Public Service Commission (see paragraph II.D.1 below);

(iii) Necessary real property in Wyoming suitable to UCAR and UW is secured for location of the NWSC (see paragraph II.C.1 below);

(iv) UCAR, UW and the Wyoming Business Council have entered into a final contract delineating access to the capacity of the supercomputer housed within the NWSC (see paragraph II.E.5 below);

(v) UCAR, UW and the Wyoming Business Council have entered into a final contract regarding the location and construction of a building to house the supercomputing equipment (see paragraph II.E.2 below);

2. Site Specific Investment.  The Wyoming Business Council agrees to work with the appropriate City, County, or Joint Powers Boards to apply under the Business Ready Community Program for up to $4.5 million in funds to support site infrastructure needs, including funds for roadways, sewer and water connections, and fiber optic connectivity.

3. Environmental Stewardship.  The Wyoming Business Council agrees to promote environmentally responsible practices in the provision of infrastructure needs for the NWSC site.

C.  Cheyenne LEADS.

1. Real Property.  Cheyenne LEADS will agree to transfer title to UCAR or to hold in trust or escrow for UCAR or the successor manager of NCAR, as designated by NSF, approximately 24 acres of land located at North Range Business Park, Block 2, lots 3 and 4, Cheyenne, Wyoming, or such other lots in the Business Park as may be mutually agreed to by UCAR and Cheyenne LEADS, at $0 cost to UCAR or such designee as UCAR or the NSF directs.  Cheyenne LEADS will agree to convey to UCAR good and marketable title to the Real Property on the date of closing, the date to be determined as mutually agreed, by a Special Warranty Deed acceptable to UCAR.  The Parties will enter into a formal Contract for Purchase and Sale of the Real Property, to be drafted and provided by Cheyenne LEADS, who shall furnish an ALTA Owners Policy, existing

NCAR-Wyoming Supercomputing Center
Memorandum of Understanding

Confidential

NSF_AR_00004215

Page 4 of 9

environmental assessments and also cover filing and recording costs and closing fees. Cheyenne LEADS agrees to cooperate with UCAR and/or NSF with regard to any environmental assessments or impact studies. Cheyenne LEADS will agree to also provide UCAR with all site documentation (existing survey reports, topographic maps, soil study results, etc.) required for site assessment during the project design phase.

2. Development Ready. Cheyenne LEADS, not UCAR/NCAR, will agree to be responsible for providing the site in development-ready condition, by providing roads, water and sewer. Once UCAR/NCAR has identified its site-specific fiber optic connectivity needs, Cheyenne LEADS agrees to work with NCAR/UCAR, fiber providers and the Wyoming Business Council to develop the requisite fiber capacity to the site. Where appropriate, Cheyenne LEADS agrees to apply for or assist NCAR/UCAR in applying for all permits necessary for site infrastructure, development and construction. It is the intention of the Parties that any additional infrastructure development to bring the site to fully development-ready status will be funded through Business Ready Communities Grants earmarked for this project by the Wyoming Business Council.

D. Cheyenne Light, Fuel & Power Company.

1. Electric Service. Cheyenne Light, Fuel & Power Company will provide primary voltage electric service and primary voltage metering for permanent facilities and secondary voltage electric service and metering for temporary construction power for the NWSC to be located at the North Range Business Park. For the projected initial permanent electrical load of 8 MW, Cheyenne Light Fuel & Power Company will provide energy service pursuant to the applicable rate schedule found in the Company's tariffs and pursuant to the laws, rules and regulations of the State of Wyoming and Public Service Commission. Cheyenne Light Fuel & Power Company will provide a line extension and other facilities to extend power to the NWSC site at $0 cost to UCAR. If a second reserved, redundant source of electric power is required, Cheyenne Light Fuel & Power will bill UCAR or the successor manager of NCAR (see paragraph II.F.1 below) the appropriate monthly charge for reserving that capacity pursuant to the regulations.

2. Expansion and Capacity. When the NWSC's long term electrical load is projected to necessitate additional Cheyenne Light, Fuel & Power Company electrical system infrastructure , Cheyenne Light, Fuel & Power Company agrees to provide the substation power supply by installing the appropriate sized substation transformer at an existing facility or building a new substation on the NWSC site to handle the projected load of 24 MW at $0 cost to UCAR..

3. Renewable Energy. Cheyenne Light, Fuel & Power Company agrees to make a commitment to using a minimum of ten percent (10 %) renewable energy in the provision of services to the NWSC. This requirement will initially be met with power generated from the wind farm located on Happy Jack Road or other renewable sources. The percentage of renewable energy for the NWSC site is anticipated to increase over time as CLF&P's capacity in renewable energy expands. Any deviations from approved Cheyenne Light, Fuel & Power Company tariffs for the provision of services to the NWSC must be approved by the Wyoming Public Service Commission.

NCAR-Wyoming Supercomputing Center
Memorandum of Understanding

Confidential                                    NSF_AR_00004216

Page 5 of 9

E. UCAR.

      1. NSF Approval. The NWSC cannot proceed without NSF approval, which it may grant at its sole discretion. UCAR is responsible for seeking all required authorizations for the NWSC from NSF.

      2. Construction of Center. Subject to NSF's approval of the project, UCAR will construct the NWSC at the North Range Business Park. Title to the NWSC, including the land, shall be held by UCAR, or its designee or successor as manager of NCAR, subject to the provisions of paragraph II.F.2 below. UCAR, with NSF oversight, shall retain sole responsibility and authority for operating the NWSC once it is constructed.

      3. Project Management. UCAR will agree to provide overall project management for the NWSC construction effort. UCAR shall have complete design and project management control, contracting authority and construction responsibility for the NWSC.

      4. Environmental Compliance/Stewardship. UCAR agrees to ensure compliance with all applicable environmental federal and state laws and regulations to promote environmentally responsible practices in the design, planning and construction of the NWSC.

      5. Allocation of Computing Resources. UCAR agrees to work with UW and NSF on a joint process, including governance and a framework, to allocate the computing resources that are to be made available to the NCAR/UW alliance in any given year.

      6. Intellectual Collaborations. UCAR agrees to work with UW to jointly pursue and develop mutually beneficial opportunities for intellectual collaboration and exchange, including joint appointments, scientific and/or faculty visitor positions, and other mechanisms designed to effectively support and develop such collaborations.

      7. Other Collaborations. UCAR agrees to work with UW and other academic and research institutions on science, engineering and computing collaborations related to the NWSC.

F. Successor Management and Ownership

      1. Successor Management of NCAR. Should UCAR discontinue as the manager of NCAR, the Wyoming Parties agree to negotiate in good faith with the successor organization that operates and manages NCAR to provide the same terms for the NWSC.

      2. Ownership. During construction, UCAR will hold title to the land and facility. NSF will make the final determination regarding who will hold title to the NWSC, including the land. Should NSF permit UCAR to hold title as the manager of NCAR then title to the NWSC, including the land, shall be vested in UCAR, or its designee or successor as manager of NCAR, subject to the provisions of paragraph II.F.3 below. Should NSF direct transfer of the title to UW then title to the NWSC, including the land, shall be transferred to UW as set forth below.

      3. Ownership Transfer. Should NSF discontinue funding to UCAR to support the operation of the NWSC, or at any time should NSF direct UCAR to transfer ownership to UW, then UCAR and UW shall take the following actions:

NCAR-Wyoming Supercomputing Center
Memorandum of Understanding

Confidential                                    NSF_AR_00004217

Page 6 of 9

a.  UW shall take ownership of the NWSC as specified in a purchase/transfer agreement between UW and UCAR.

b.  UCAR shall give the Wyoming Parties written notice of NSF's election to discontinue funding one year prior to the date on which funding will be discontinued, or as soon as possible after notification from NSF.

c.  In the event NSF continues to fund the operation of the NWSC but directs UCAR to transfer title to UW, then UCAR and UW shall enter into either a lease agreement or a use agreement specifying the terms under which NCAR will continue to use and operate the facility under UW ownership.

d.  Upon satisfaction of the conditions in Paragraph F.3.c. above, UCAR and UW will execute all necessary documents to effect the transfer of title to the land, building and all associated electrical and mechanical equipment to UW. Upon transfer of title, UCAR will be relieved of any further financial obligations associated with the construction or operation of the NWSC, unless as otherwise specified in the use/lease agreement between UCAR and UW. In the event NSF ceases to support the ongoing operation of the NWSC, equipment acquired with Federal funds and titled with the Federal government, such as supercomputers, mass storage systems, etc., will not be transferred to UW under this contingency clause. However, should NCAR no longer have a need for the government furnished equipment, UCAR agrees to seek NSF approval for UW to assume title.

G. Design of Center

1. UW has entered into an agreement with UCAR on a sole source basis under which UCAR has selected an architectural and engineering firm to design the NWSC.

2. In the agreement, UW has committed to an amount not to exceed $4,250,000 to fund the design work, which is subject to NSF review and approval. The amount of the lump sum payment contemplated under paragraph II.B.1 of this Agreement will be accordingly reduced by the amount actually expended for the design work.

3. UW will own the work product resulting from the design agreement, but will provide UCAR an exclusive license to use the work product for construction of the NWSC, upon execution of the required agreements and approvals in paragraph II.B.1 of this Agreement.

4. UCAR will commit to an amount not to exceed $4,700,000 from NSF to be expended by UCAR for project management. All anticipated funding from NSF is subject to availability of funds. Nothing in this MOU may be construed to obligate NSF to any current or future expenditure of resources in advance of the availability of appropriations, nor does this MOU obligate NSF to spend funds on any particular project or purpose, even if those funds are available.

H. Partnership Governance Board

A Partnership Governance Board (PGB) will be established to provide overall management review and guidance for NWSC construction and operation and for

NCAR-Wyoming Supercomputing Center
Memorandum of Understanding

Confidential                                    NSF_AR_00004218

Page 7 of 9

affiliated intellectual collaborations between NCAR, UCAR, and UW. The
responsibilities of the PGB summarized as follows:

- Monitoring the process of NWSC development and operation;
- Reviewing and approving, along with NSF, the Project Execution Plan for
  NWSC construction;
- Reviewing and recommending whether additional entities should be admitted as
  an NWSC facility partner; and
- Reviewing and approving plans for specific intellectual collaborations between
  NCAR, UCAR, and UW (e.g., proposed joint appointments, joint research
  initiatives, etc.).

The PGB is comprised of representatives of NCAR and UW, with equal
representation from each entity. Members include the UW Vice President for Research
and Economic Development, the UW Vice President for Academic Affairs, the NCAR
Director, and the NCAR/CISL Director. The PGB reports to the UCAR President.
Established at the initiation of the NCAR-Wyoming partnership, the PGB will persist
throughout construction and operation of the NWSC. In order to fulfill its obligations,
the PGB will meet semi-annually beginning in June 2010, or more often as needed
thereafter. These meetings may be face-to-face or teleconference/videoconference call
format.

To assist in the oversight of the design and construction of the NWSC, the PGB
will form an NWSC Oversight Committee (NOC). The charge of the NOC is to provide
independent oversight, guidance, and community input during the planning, development
and construction phases of the NWSC project. The committee in doing its work will draw
on expertise in the areas of construction, sustainable design, large project management,
business opportunity development in the technology sector, and high□performance
computing (HPC) facility operations. The NOC will consider all aspects of the project
and from time to time may focus on specific details as identified by its members, NCAR
or UW.

### Miscellaneous.

A. This Agreement is a preliminary understanding of the roles and responsibilities, and
the parties anticipate further agreements to be negotiated between the individual parties
on the specific issues outlined above. This Agreement does not involve the exchange of
funds and may be terminated at any time by notice of one party to any of the other
parties.

B. Only contracts that involve the State of Wyoming shall be reviewed and approved by
the Governor and the Attorney General for Wyoming.

C. The parties will hold each other's identified propriety or confidential information in
trust and confidence and protect such information from unauthorized use or disclosure.
The parties will not disclose, publish, divulge or release such information or knowledge,

NCAR-Wyoming Supercomputing Center
Memorandum of Understanding

Page 8 of 9

except as necessary to do so in the performance of the responsibilities described in this Agreement. The parties will not engage in any personal or professional activity, or enter into any financial transaction, that involves, or appears to involve, the direct or indirect use of proprietary or confidential information to further a private or competitive business gain. Notwithstanding anything herein to the contrary, UCAR understands and agrees that all understandings hereunder of the University of Wyoming and Wyoming Business Council on behalf of the State of Wyoming are subject to its duties and obligations pursuant to the Wyoming's Public Records Act, Wyo. Stat. §16-4-201 et seq. Notwithstanding anything herein to the contrary, UCAR agrees that it will make no claim against the State of Wyoming or the Wyoming Business Council if the State of Wyoming or the Wyoming Business Council makes available to the public any report or notice or other information it receives from UCAR.

D. Nothing in this Agreement should be interpreted as a legal partnership or joint venture.

E. Notwithstanding anything herein to the contrary, the State of Wyoming, the University of Wyoming, and the Wyoming Business Council reserve all immunities, defenses, rights or actions arising out of or under the Eleventh Amendment to the U.S. Constitution and Wyo. Stat. § 1-39-104(a) and no waiver of any such immunities, defenses, rights or actions shall be implied or otherwise deemed to exist by reason of the entry of the State of Wyoming or the Wyoming Business Council into this Agreement, or any agreement related hereto, by any express or implied provision hereof, or by any act or omissions to act by any representative of the State of Wyoming, whether taken pursuant to this Agreement with UCAR or prior to execution hereof.

F. NSF is not a party to this MOU and nothing in this MOU gives the parties any right of action against NSF.


Understood and Agreed to By:

The University Corporation for Atmospheric Research

Richard Anthes
President


Office of Wyoming Governor


Dave Freudenthal
Governor

Confidential                    NSF_AR_00004220

Page 8 of 9

except as necessary to do so in the performance of the responsibilities described in this Agreement. The parties will not engage in any personal or professional activity, or enter into any financial transaction, that involves, or appears to involve, the direct or indirect use of proprietary or confidential information to further a private or competitive business gain. Notwithstanding anything herein to the contrary, UCAR understands and agrees that all understandings hereunder of the University of Wyoming and Wyoming Business Council on behalf of the State of Wyoming are subject to its duties and obligations pursuant to the Wyoming's Public Records Act, Wyo. Stat. §16-4-201 et seq. Notwithstanding anything herein to the contrary, UCAR agrees that it will make no claim against the State of Wyoming or the Wyoming Business Council if the State of Wyoming or the Wyoming Business Council makes available to the public any report or notice or other information it receives from UCAR.

D. Nothing in this Agreement should be interpreted as a legal partnership or joint venture.

E. Notwithstanding anything herein to the contrary, the State of Wyoming, the University of Wyoming, and the Wyoming Business Council reserve all immunities, defenses, rights or actions arising out of or under the Eleventh Amendment to the U.S. Constitution and Wyo. Stat. § 1-39-104(a) and no waiver of any such immunities, defenses, rights or actions shall be implied or otherwise deemed to exist by reason of the entry of the State of Wyoming or the Wyoming Business Council into this Agreement, or any agreement related hereto, by any express or implied provision hereof, or by any act or omissions to act by any representative of the State of Wyoming, whether taken pursuant to this Agreement with UCAR or prior to execution hereof.

F. NSF is not a party to this MOU and nothing in this MOU gives the parties any right of action against NSF.


Understood and Agreed to By:

The University Corporation for Atmospheric Research


_____

Richard Anthes
President

Office of Wyoming Governor

_____   4/29/10

Dave Freudenthal
Governor


NCAR-Wyoming Supercomputing Center
Memorandum of Understanding


Confidential                    NSF_AR_00004221

Page 9 of 9

Wyoming Attorney General's Office

#59599    4/29/10

Donald Gerstein
Senior Assistant Attorney General

The Wyoming Business Council

4-29-10

Robert Jensen
CEO

The University of Wyoming

Douglas H. Vinzant
Vice President for Administration

Cheyenne LEADS

Randy D. Bruns
CEO

Cheyenne Light, Fuel & Power Company

David R. Emery
Chairman and CEO

NCAR-Wyoming Supercomputing Center
Memorandum of Understanding

Confidential

Page 9  of 9


Wyoming Attorney General's Office


_____

Donald Gerstein
Senior Assistant Attorney General


The Wyoming Business Council


_____

Robert Jensen
CEO


The University of Wyoming

_____

Douglas H. Vinzant
Vice President for Administration


Cheyenne LEADS


_____

Randy D. Bruns
CEO


Cheyenne Light, Fuel & Power Company


_____

David R. Emery
Chairman and CEO


Confidential

NSF_AR_00004223

Page 9  of 9

Wyoming Attorney General's Office

_____

Donald Gerstein
Senior Assistant Attorney General

The Wyoming Business Council

_____

Robert Jensen
CEO

The University of Wyoming

_____

Douglas H. Vinzant
Vice President for Administration

Cheyenne LEADS

_____

Randy D. Bruns
CEO

Cheyenne Light, Fuel & Power Company

_____

David R. Emery
Chairman and CEO

Confidential

NSF_AR_00004224

Page 9  of 9

Wyoming Attorney General's Office


_____

Donald Gerstein
Senior Assistant Attorney General


The Wyoming Business Council


_____

Robert Jensen
CEO


The University of Wyoming


_____

Douglas H. Vinzant
Vice President for Administration


Cheyenne LEADS


_____

Randy D. Bruns
CEO


Cheyenne Light, Fuel & Power Company

_____

David R. Emery
Chairman and CEO

Confidential

NSF_AR_00004225