# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:26-CV-01061-RBJ

UNIVERSITY CORPORATION FOR ATMOSPHERIC RESEARCH,

 Plaintiff,

v.

NATIONAL SCIENCE FOUNDATION;
BRIAN STONE, in his official capacity as Acting Director of the National Science Foundation;
NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION;
NEIL JACOBS, in his official capacities as Under Secretary of Commerce for Oceans and
Atmosphere and Administrator of the National Oceanic and Atmospheric Administration;
UNITED STATES DEPARTMENT OF COMMERCE;
HOWARD LUTNICK, in his official capacity as Secretary of Commerce;
UNITED STATES OFFICE OF MANAGEMENT AND BUDGET, and
RUSSELL VOUGHT, in his official capacity as Director of the United States Office of
Management and Budget,

 Defendants.

---

### *AMICUS CURIAE* BRIEF OF THE UNIVERSITY OF WYOMING

---

COMES NOW, *Amicus Curiae* The University of Wyoming, by and through undersigned counsel, and respectfully submits this brief pursuant to Local Rule 7.1(d), *Sgaggio v. Young*, 2022 WL 970008 at *3 (D.Colo. March 31, 2022), and Federal Rule of Appellate Procedure 29 in support of Defendants' Response to Motion for Preliminary Injunction and in opposition to Plaintiff University Corporation for Atmospheric Research's ("UCAR") Motion for Preliminary Injunction [Doc. No. 18] (the "Motion"). The University of Wyoming urges this Court to decline to enter a preliminary injunction in this matter on the grounds that balancing the equities and considering the public interest in this case do not clearly and unequivocally justify the extraordinary remedy of issuing a preliminary injunction in this case.

## I.      Interests of the University of Wyoming

The University of Wyoming is the State of Wyoming's only four-year institution of higher learning and is a nationally recognized research university with over 700 expert faculty, world-class facilities, and 10,819 enrolled students.[1] As a Carnegie Classification of Institutions of Higher Education Research Level 1 (R1) and land-grant institution, The University of Wyoming is among the top research universities in the United States, recognized for its commitment to groundbreaking research, academic excellence, and impactful discoveries that benefit Wyoming and the world.[2]

Since the first conceptualization of the project with the National Center for Atmospheric Research ("NCAR") and the National Science Foundation ("NSF"), the University of Wyoming and the State of Wyoming have played a major role in the development and management of the NCAR-Wyoming Supercomputing Center ("NWSC"). "[D]iversification of Wyoming's economy" and "attracting top-flight scientists and faculty" were among the benefits of the planned center, which would "solidify the state's long-term commitment toward innovative ideas, new products and new companies," according to then-Wyoming Governor Dave Freudenthal and University of Wyoming then-President Tom Buchanan. Governor Freudenthal said during the initial planning in 2007, "[t]his is a great day for Wyoming. This is exactly the type of economic development that will allow Wyoming to build our intellectual capital and become a world-class player in the high-tech arena. Wyoming will become a magnet for researchers, professors, students, and entrepreneurs . . . who rely on access to one of the world's most powerful computers." [3]

---

[1] https://issuu.com/uwyo/docs/uwfactbook_web
[2] https://www.uwyo.edu/research/about/uwyo-r1-info.html
[3] https://www.pinedalewyoming.com/news/2007/01/MoreonUWSupercompute.htm

The University of Wyoming and the State of Wyoming have committed over $40,000,000 in funding for the NWSC project, the vast majority of which has already paid for construction and operations of the NWSC since 2010.[4] *See* Exhibit A, Contract Between the Wyoming Business Council, The University of Wyoming and the University Corporation for Atmospheric Research, effective June 15, 2010 (the "Funding Contract"). Indeed, because of this significant financial contribution, all parties acknowledge the vested right of The University of Wyoming. [Doc. No. 18, pp. 7-8; Doc. No. 32, p. 4, and related exhibits] The interests of the University of Wyoming in the future of the NWSC, therefore, is not merely contingent or remote. The University of Wyoming has an unambiguous contractual right under its Memorandum of Understanding with UCAR to take title to the property upon the direction of NSF, even if UCAR remains in operational control of the NWSC.

The University of Wyoming also has a contractual right based on its prior and continuing investment in the NWSC to assume ownership and undertake maintenance of the NWSC property in the event NSF discontinues funding to UCAR for the operation of the NWSC. *See* Exhibit B, Agreement Between The University of Wyoming, Wyoming Business Council And University Corporation for Atmospheric Research, effective May 18, 2010 (the "Use Agreement"), Section 11.1.2 & 11.3.2. Specifically, the Use Agreement provides:

> 11.3.2 In the event of termination under Section 11.1.2 [NSF discontinues UCAR funding for the NWSC], then UCAR and UW [the University of Wyoming] shall take the following actions:
>
> a. UW shall take ownership of the NWSC as specified in a purchase/transfer agreement which shall be executed by UW and UCAR prior to commencement of construction of the NWSC.

---

[4] The University of Wyoming has a remaining commitment of $1,000,000 annually through 2030.

b. UCAR shall give UW written notice of NSF's election to discontinue funding one year prior to the date on which funding will be discontinued.

c. The purchase/transfer agreement shall specify that UW will pay funds to UCAR sufficient to repay UCAR's remaining bond debt obligation in exchange for ownership of the NWSC using funds available to UW.

d. If UW takes ownership under subparagraph a., UCAR and UW shall execute all necessary documents to effect the transfer of the land, building and all associated electrical and mechanical equipment to UW. Upon transfer of title, UCAR will be relieved of any further financial obligations associated with the construction or operation of the NWSC. Equipment acquired with Federal funds and titled with the Federal government, such as supercomputers, mass storage systems, etc., will not be transferred to UW under the purchase/transfer agreement.

Exhibit B, Section 11.1.2 & 11.3.2. The University of Wyoming has fully performed each of its obligations under the Funding Contract, the Use Agreement, and all other obligations it may have with respect to the NWSC.

The University also has a history of practical, hands-on experience with the NWSC that is at the heart of UCAR's Motion. Through the Wyoming-NCAR Alliance ("WNA"), 320 million core hours of the NWSC "Derecho" system are dedicated to Wyoming-led projects and allocations of those hours are overseen through The University of Wyoming.[5]  In 2025, the University used all of its CPU allocation, much of which was dedicated to atmospheric research. Additionally, the University of Wyoming has created a series of "Derecho Professorships" that are used to attract and support distinguished faculty across multiple disciplines, with millions of NWSC CPU hours dedicated for this purpose. Further, allocations to University of Wyoming faculty benefit

---

[5] https://www.uwyo.edu/nwsc/index.html

undergraduate and graduate courses at the University.[6] The University has also established a proven track record of managing NSF's Mid-scale Research Infrastructure, which is on a similar scale to the NWSC Derecho system.[7]

As such, The University of Wyoming has a significant interest in matters relating to the NWSC, including an unambiguous contractual right to take title, possession, and ownership of the NWSC if UCAR's funding is terminated. The entry of a preliminary injunction as requested in the Motion, therefore, could impact The University of Wyoming's contractual rights and harm its ability to propose and plan an orderly and seamless transition in management of the NWSC in the event NSF elects in the future to transfer ownership and operations. In fact, entry of the preliminary injunction paradoxically prevents NSF from taking the very action which would trigger UCAR's review rights before this Court.

Further, coordination and creation of a transition plan could address and ameliorate the very harms, inequities, and public risks asserted by UCAR in its Motion. Transition plans for key employees could be evaluated to avoid an exodus of NWSC's workforce and obligations could be assumed to ensure that UCAR is "relieved of any further financial obligations." Public harms from lapses in research or disruption of ongoing projects could be avoided through a seamless and coordinated transition. The uncertainty caused by the injunction itself would pose a greater risk of private and public harm than ensuring that, should UCAR be divested of the NWSC, The University of Wyoming is equipped and ready to assume operations through proposals and planning with the NSF.

---

[6] *Id.*
[7] https://www.nsf.gov/awardsearch/show-award/?AWD_ID=1935930&HistoricalAwards=false

## II.    Legal Standard

UCAR requests that this Court "preliminarily enjoin Defendants from divesting UCAR or NCAR of any rights, resources, or responsibilities related to NWSC." [Doc. No. 18, p. 15]

> As a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." *SCFC ILC, Inc. v. Visa USA, Inc.,* 936 F.2d 1096, 1098 (10th Cir.1991) (citation omitted); *United States ex rel. Citizen Band Potawatomi Indian Tribe of Okla. v. Enter. Mgmt. Consultants, Inc.,* 883 F.2d 886, 888–89 (10th Cir.1989) ("Because it constitutes drastic relief to be provided with caution, a preliminary injunction should be granted only in cases where the necessity for it is clearly established."). In order to be entitled to entry of a preliminary injunction pursuant to Fed. R. Civ. P. 65, the moving party must establish that:
>
>> (1) [he or she] will suffer irreparable injury unless the injunction issues; (2) the threatened injury ... outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood [of success] on the merits.
>
> []
> Because the limited purpose of a preliminary injunction "is merely to preserve the relative positions of the parties until a trial on the merits can be held," . . . we have "identified the following three types of specifically disfavored preliminary injunctions . . . : (1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits." Such disfavored injunctions "must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course."

*Schrier v. Univ. Of Co.,* 427 F.3d 1253, 1258–59 (10th Cir. 2005) (some internal citations omitted).

Whether an injunction is "mandatory" generally examines "whether the non-moving party is being

ordered to perform an act[.]" *Id.* at 1260 (quoting *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 1006 (10th Cir. 2004) (Seymour, J., concurrence in part)).

Here, UCAR asks the Court to ensure Defendants act in a certain way, namely enjoining them from "divesting UCAR or NCAR of any . . . resources . . . related to NWSC." [Doc. No. 18, p. 15] In other words Defendants must maintain prior funding and other resources. Additionally, such an injunction appears to summarize and follow the extensive Prayer for Relief sought in subparagraphs a. – j. of the Complaint [Doc. No. 1, pp. 46-47], resulting in a preliminary injunction that affords the movant all relief that it could recover at the conclusion of a full trial on the merits. In both of these instances, the request for a preliminary injunction triggers the "close[] scrutiny" of this Court.

### III.     Equitable and Public Policy Considerations Weigh Against an Injunction

In balancing the equities and public policy, UCAR first itemizes several broad financial and reputational impacts of a future decision to place the University of Wyoming in operation of the NWSC. These include statements as to impairment of UCAR's credit ratings, inability to perform on operational contracts for the site and with NSF, harm to goodwill, and general loss of resources. [Doc. No. 18, pp. 14-15]. UCAR also discusses at length the potential loss of its skilled workforce who service the NWSC, presumably in Laramie County, Wyoming and remotely. [Doc. No. 18, pp. 12-14]

UCAR ignores, however, that the unconsummated discussion as to stewardship of the NWSC would not result in shuttering the supercomputer. If The University of Wyoming is transferred operations of the NWSC, it expects to operate the supercomputer for continued research and academic purposes. Indeed, the Use Agreement specifically contemplates both that the University of Wyoming has a right to take ownership of the NWSC in exactly this situation,

and that "[u]pon transfer of title, UCAR will be relieved of any further financial obligations associated with the construction or operation of the NWSC" based upon consultation and coordination with The University of Wyoming. Exhibit B, Section 11.3.2.d.

UCAR further asserts that greater harms will be borne by the public if it is divested of the NWSC. Specifically, UCAR asserts future climate disasters, compromised weather predictions, and gaps in research may harm property and cost lives. UCAR does not—and cannot—assert with any confidence the likelihood of the safeguarding of lives and property absent an injunction, but it also fails to acknowledge that coordination of a seamless transition as required under the Use Agreement would eliminate these risks.

UCAR's particularized and public harms fall into these two categories. First, harms which it is contractually protected from by the Use Agreement, and second, harms which are only exacerbated by entry of a preliminary injunction. If operations of the NWSC are transferred, then the contracts and obligations of operations could be transferred to the new operator. Additionally, UCAR expressly acknowledged this possibility and contractually agreed to ensure a collaborative transition in exactly these circumstances. *See* Exhibit B, Section 11.1.2 (termination provisions in the event "NSF elects to discontinue funding to UCAR to support the operation of the" NWSC) & Section 11.3.2 (providing terms for the transition of ownership and operations in the event of terminated funding to UCAR for the operation of the NWSC). In these circumstances, The University of Wyoming and UCAR agreed to a collaborative approach aimed at an orderly transition and elimination of UCAR's "financial obligations associated with the construction or operation of the NWSC." Exhibit B, Section 11.3.2.d. UCAR's proposed injunction, however, would prohibit any coordination as between itself, NSF, and The University of Wyoming which could address exactly these concerns.

The injunction sought by UCAR only exacerbates the harms recited in the Motion and magnifies the public policy considerations cited by UCAR. If this Court enters the preliminary injunction, such injunction will prohibit any collaborative plan to address the public and individualized harms recited by UCAR in the Motion. If NSF succeeds on the merits and later decides to transfer operations and ownership of the NWSC to the University of Wyoming (or any other subsequent operator), neither UCAR nor The University of Wyoming will be prepared for such a transfer due to the injunction. In such a situation, diminished forecasting abilities, responses to severe weather, and disruption of ongoing projects is more likely to occur, not less.

In the event the Court denies the Motion and allows evaluation of a potential transfer of the NWSC, the only potential harm suffered by UCAR is the expenditure of resources in providing the information requested of it from NSF. The risks avoided are UCAR's own recited irreparable harms relating to forecasting catastrophic disasters, "risk[s to] lives and property", and disruption of ongoing research projects and simulations. Assuming NSF later takes a judicially reviewable action and further assuming the possibility of the public harms recited by UCAR, there would be protections against such harmful gaps in operations.

The Court therefore should reframe these competing interests, assuming that the harms UCAR has identified are accurate. On one side of the scale is the need for collaboration to protect against those harms and to ensure continuity of NWSC operations. These harms are minimized only if the Motion is denied. In contrast, an injunction would halt coordination with the NSF and potentially with the University of Wyoming under the Use Agreement. Granting the injunction only assures an operational void if the case is decided on the merits in favor of Defendants and substantially heightens the possibility that the harms cited in the Motion could occur.

### IV.    Conclusion

The University of Wyoming provides this *Amicus Curiae* brief in support of Defendants' Opposition to UCAR's Motion. The critical factors to be considered in evaluating a request for a preliminary injunction of balancing of equities, evaluation of irreparable harm, and consideration of public weigh in favor of allowing collaboration between UCAR, the NSF, and The University of Wyoming as provided in the relevant Use Agreement and Funding Contract. This is especially true when viewed through the "heightened scrutiny" lens applied in situations such as this. It is only through cooperation to ensure operational continuity of the NWSC that harms can be avoided in the event the operations and title to the NWSC is transferred from UCAR by NSF in the future.

**DATED** this 29th day of April, 2026.

*AMICUS CURIAE*, UNIVERSITY OF WYOMING

By: */s/ Lucas Buckley*
    Lucas Buckley, #38651
    Kari Hartman, #56071
    HATHAWAY & KUNZ, LLP
    2515 Warren Ave., Suite 500
    Cheyenne, WY  82001
    (307) 634-7723
    (307) 634-0985 (fax)
    lbuckley@hkwyolaw.com
    khartman@hkwyolaw.com

ATTORNEYS FOR UNIVERSITY OF WYOMING

### CERTIFICATE OF SERVICE

The undersigned certifies that on this 29th  day of April 2026, a true and correct copy of the foregoing document was filed via this Court's CM/ECF filing system and served on all counsel of record.

*/s/ Candice Hough*
Hathaway & Kunz, LLP