# EXHIBIT A

## CONTRACT BETWEEN
## THE WYOMING BUSINESS COUNCIL
## THE UNIVERSITY OF WYOMING
## AND THE UNIVERSITY CORPORATION FOR ATMOSPHERIC RESEARCH

1.      **Parties.** This Contract is made and entered into by and between the Wyoming Business Council, an agency of the State of Wyoming (Council), whose address is 214 West 15th St., Cheyenne, WY 82002; the University of Wyoming (University), whose address is 1000 E. University Ave. Laramie, WY 82071; and the University Corporation for Atmospheric Research (UCAR), whose address is PO. Box 3000, Boulder, CO 80307.

2.      **Purpose of Contract.** The purpose of this Contract is to provide partial funding for the construction of a five hundred (500) teraflop to one (1) petaflop supercomputer facility in Wyoming as part of the National Center for Atmospheric Research's (NCAR) national research activities (the NCAR-Wyoming Supercomputing Center or NWSC). UCAR is the managing entity of NCAR.

In 2007, the Wyoming Legislature appropriated twenty million dollars ($20,000,000.00) in support of the NWSC. 2007 Wyoming Session Laws, Chap. 136, Sec. 336. Of this amount, the Wyoming Legislature directed not to exceed three million five hundred thousand dollars ($3,500,000.00) to the University of Wyoming to reimburse it for its contract with UCAR for architectural and engineering services for the construction of the NWSC. 2009 Wyoming Session Laws, Chap. 159, Sec. 343. During the 2010 legislative session, the Wyoming Legislature enacted legislation to increase the 2009 appropriation to the University of Wyoming for those architectural and engineering services by seven hundred fifty thousand dollars ($750,000.00) to a total of not to exceed four million two hundred fifty thousand dollars ($4,250,000.00). It is anticipated that during the 2011 legislative session, the Wyoming Legislature will authorize this appropriation to the University to be expended to reimburse the University for its contract with UCAR for certain mobilization expenses. This Contract sets out the terms and conditions under which the State of Wyoming, through the Wyoming Business Council, will provide to UCAR the remainder of the original twenty million dollar ($20,000,000.00) appropriation in support of the NWSC. This Contract also serves as the legislatively –required Contract between the parties regarding the location and construction of the building to house the Supercomputer.

3.      **Term of Contract and Required Approvals.** This Contract shall commence January 1, 2010 or upon the date the last signature is affixed hereto, whichever is later, and shall terminate on October 1, 2012, unless otherwise amended or terminated in accordance with the terms and conditions specifically provided herein.

*Contract between Wyoming Business Council, University of Wyoming,*
*and the University Corporation for Atmospheric Research 2010-11*
*Page 1 of 8*

By law, contracts for professional or other services must be approved as to form by the Attorney General, Wyo. Stat. § 9-1-403(b)(v). The appropriation of these funds by the Wyoming Legislature requires that this Contract be reviewed and approved by the Governor.

4.    **Payment.**  Council agrees to pay UCAR for the services described in Section 5.  The total payment under this Contract shall not exceed fifteen million seven hundred fifty thousand dollars ($15,750,000) plus any unexpended and unobligated funds by UCAR remaining from the appropriation to the University described in Section 2 of this Contract.  Payment will be made upon UCAR's request and invoice after the Council determines that UCAR has satisfactorily completed legislatively-required actions as noted in Section 5 below. No payment shall be made for services performed before the date upon which the last required signature is affixed to this Contract. The monetary proceeds of this Contract are specifically for the NWSC specified in this Contract and shall not be used for any lobbying efforts.  UCAR shall ensure that no State funds are used in this manner.

The balance of the State of Wyoming's twenty million dollar ($20,000,000.00) commitment to fund the NWSC shall be the transfer to UCAR of ownership of all construction documents developed under Section 8.3 of the University's January 13, 2009, contract with UCAR for architectural and engineering services and any amendments thereto. UCAR specifically acknowledges that the transfer of such ownership upon final National Science Foundation approval satisfies the balance of the State's obligation under this Contract.

5.    **Responsibilities of UCAR.**

A.    Pursuant to 2007 Wyoming Session Laws, Chap.  136, Sec. 336, UCAR shall achieve the following:

(i)    Secure authorization and funding from the National Science Foundation to locate the NWSC in Wyoming;

(ii)    Enter into a binding contractual agreement with a utility company under which the utility agrees to provide all necessary electrical infrastructure for the operation of the NWSC;

(iii)    Secure necessary real property in Wyoming suitable to NCAR and the University for location of the NWSC;

(iv)    Enter into a contract with the University and the Council delineating access to the capacity of the Supercomputer; and

*Contract between Wyoming Business Council, University of Wyoming,
and the University Corporation for Atmospheric Research 2010-11
Page 2 of 8*

(v)    Enter into a contract with the University and the Council regarding the location and construction of a building to house the Supercomputer.

**B.**    The funds paid to UCAR under this Contract shall be used solely for the purpose of the construction of the NWSC.  The NWSC shall be built in substantial compliance with the project description as contained at http://www.cisl.ucar.edu/nwsc/ and related links as of the effective date of this Contract.

**6.    Responsibilities of the Council.**    The Council shall monitor UCAR's progress in fulfilling Contractor's responsibilities and ensure those responsibilities required prior to payment have been fulfilled satisfactorily.

**7.    Location and Construction of Supercomputer.**    The parties to this Contract agree and recognize that the NWSC will be built on land provided to UCAR by Cheyenne LEADS, identified in the Memorandum of Understanding among the parties, Cheyenne LEADS, and Cheyenne Light Fuel and Power, dated April 30, 2010, as located on approximately 24 acres of land located at Lot 2, Block 12, North Range Business Park, Fourth Filing, Cheyenne, Wyoming. The parties further agree that construction of the NWSC shall be in substantial compliance with the design specifications contained in Attachment A to this Contract and as determined by the architectural design team selected by the University and UCAR, pursuant the University's January 13, 2009, contract with UCAR for architectural and engineering services.  This section and this Contract are intended to fulfill the requirement contained in 2007 Wyoming Session Laws, Chap.  136, Sec. 336, requiring that UCAR, the University, and the Council enter into a Contract regarding the location and construction of a building to house the Supercomputer (see Section 5.A.(v) above).

**8.    General Provisions.**

   **A.    Amendments.**    Any changes, modifications, revisions or amendments to this Contract which are mutually agreed upon by the parties to this Contract shall be incorporated by written instrument, executed and signed by all parties to this Contract.

   **B.    Americans with Disabilities Act.**    UCAR shall not discriminate against a qualified individual with a disability and shall comply with the Americans with Disabilities Act, P.L. 101-336, 42 U.S.C. 12101, et seq., and/or any properly promulgated rules and regulations related thereto.

   **C.    Applicable Law/Venue.**    The laws of the State of Wyoming shall govern the construction, interpretation and enforcement of this Contract.  The courts of the State of Wyoming shall have jurisdiction over this Contract and over the parties. The parties intend and agree that the State of Wyoming and the Council do not waive sovereign immunity by entering into this Contract, and specifically retain immunity and all defenses available to them as sovereigns pursuant to Wyo. Stat. § 1-39-104(a) and all other state law.

**D.    Assignment/Contract Not Used as Collateral.**   Neither party shall assign or otherwise transfer any of the rights or delegate any of the duties set forth in this Contract without the prior written consent of the other party.   UCAR shall not use this Contract, or any portion thereof, for collateral for any financial obligation, without the prior written permission of the Council.

**E.    Audit/Access to Records.**   The Council and any of its representatives shall have access to any books, documents, papers, and records of UCAR that are pertinent to this Contract.

**F.    Availability of Funds.**   Each payment obligation of the Council is conditioned upon the availability of government funds that are appropriated or allocated for the payment of this obligation.   If funds are not allocated and available for the continuance of the services performed by UCAR, the Contract may be terminated by the Council at the end of the period for which the funds are available.   The Council shall notify UCAR at the earliest possible time of the services that will or may be affected by a shortage of funds.   No penalty shall accrue to the Council in the event this provision is exercised, and the Council shall not be obligated or liable for any future payments due or for any damages as a result of termination under this Section. This provision shall not be construed to permit the Council to terminate this Contract to acquire similar services from another party.

**G.    Award of Related Contracts.**   The Council may undertake or award supplemental or successor contracts for work related to this Contract.   UCAR shall cooperate fully with other contractors and the Council in all such cases.

**H.    Certificate of Good Standing.**   UCAR shall provide a Certificate of Good Standing verifying compliance with the unemployment insurance and workers' compensation programs prior to performing work under this Contract.

**I.    Compliance with Laws.**   UCAR shall keep informed of and comply with all applicable federal, state and local laws and regulations in the performance of this Contract.

**J.    Entirety of Contract.**   This Contract, consisting of eight (8) pages and Attachment A, consisting of three (3) pages,, represent the entire and integrated Contract between the parties and supersedes all prior negotiations, representations, and agreements, whether written or oral.

**K.    Ethics.**   UCAR shall keep informed of and comply with the Wyoming Ethics and Disclosure Act (Wyo. Stat. § 9-13-101, *et seq.*), and any and all ethical standards governing UCAR's profession.

**L.    Extensions.**   Nothing in this Contract shall be interpreted or deemed to create an

*Contract between Wyoming Business Council, University of Wyoming,
and the University Corporation for Atmospheric Research 2010-11
Page 4 of 8*

expectation that this Contract will be extended beyond the term described herein. Any extension of this Contract shall be initiated by the Council, and shall be effective only after it is reduced to writing and executed by all parties to this Contract. Any agreement to extend the term of this Contract shall include, but not necessarily be limited to: an unambiguous identification of the Contract being extended; the term of the extension; the amount of any payment to be made during the extension, or a statement that no payment will be made during the extension; a statement that all terms and conditions of the original Contract shall, unless explicitly delineated in the exception, remain as they were in the original Contract; and, if the duties of either party will be different during the extension than they were under the original Contract, a detailed description of those duties.

**M.    Force Majeure.**  Neither party shall be liable for failure to perform under this Contract if such failure to perform arises out of causes beyond the control and without the fault or negligence of the non-performing party.  Such causes may include, but are not limited to, fires, floods, epidemics, quarantine restrictions, freight embargos, and extremely severe weather. This provision shall become effective only if the party failing to perform immediately notifies the other party of the extent and nature of the problem, limits delay in performance to that required by the event, and takes all reasonable steps to minimize delays.  This provision shall not be effective unless the failure to perform is beyond the control and without the fault or negligence of the non-performing party.  The parties intend and agree that the State of Wyoming and the Council do not waive sovereign immunity by entering into this Contract, and specifically retain immunity and all defenses available to them as sovereigns pursuant to Wyo. Stat. § 1-39-104(a) and all other applicable law.

**N.    Indemnification.**  UCAR shall indemnify, defend and hold harmless the State, the Council, and their officers, agents, employees, successors and assignees from any and all claims, lawsuits, losses and liability arising out of UCAR's failure to perform any of UCAR's duties and obligations hereunder or in connection with the negligent performance of UCAR's duties or obligations, including but not limited to any claims, lawsuits, losses or liability arising out of UCAR's malpractice.  This Agreement does not bind or purport to bind the U.S. Government or the National Science Foundation (NSF), an independent agency of the U.S. Government. Consequently, any claims or disputes arising from or in performance of this Agreement shall solely be between the Parties of this Agreement and no others.

**O.    Independent Contractor.**  UCAR shall function as an independent contractor for the purposes of this Contract, and shall not be considered an employee of the State of Wyoming for any purpose.  UCAR shall assume sole responsibility for any debts or liabilities that may be incurred by UCAR in fulfilling the terms of this Contract, and shall be solely responsible for the payment of all federal, state and local taxes which may accrue because of this Contract. Nothing in this Contract shall be interpreted as authorizing UCAR or its agents and/or employees to act as an agent or representative for or on behalf of the State of Wyoming or the Council, or to incur

*Contract between Wyoming Business Council, University of Wyoming,*
*and the University Corporation for Atmospheric Research 2010-11*
*Page 5 of 8*

any obligation of any kind on the behalf of the State of Wyoming or the Council. UCAR agrees that no health/hospitalization benefits, workers' compensation and/or similar benefits available to State of Wyoming employees will inure to the benefit of UCAR or UCAR's agents and/or employees as a result of this Contract.

**P.    Kickbacks.**  UCAR certifies and warrants that no gratuities, kickbacks or contingency fees were paid in connection with this Contract, nor were any fees, commissions, gifts or other considerations made contingent upon the award of this Contract.  If UCAR breaches or violates this warranty, the Council may, at its discretion, terminate this Contract without liability to the Council, or deduct from the agreed upon price or consideration, or otherwise recover, the full amount of any commission, percentage, brokerage or contingency fee.

**Q.    Monitoring Activities.**  The Council shall have the right to monitor all activities related to this Contract that are performed by UCAR or its subcontractors. This shall include, but not be limited to, the right to make site inspections at any time and with reasonable notice; to bring experts and consultants on site to examine or evaluate completed work or work in progress; to examine the books, ledgers, documents, papers, and records pertinent to this Contract; and, to observe personnel in every phase of performance of the related work.

**R.    No Finder's Fees.**  No finder's fee, employment agency fee, or other such fee related to the procurement of this Contract shall be paid by either party.

**S.    Nondiscrimination.**  UCAR shall comply with the Civil Rights Act of 1964, the Wyoming Fair Employment Practices Act (Wyo. Stat. § 27-9-105 et seq.), the Americans With Disabilities Act (ADA), 42 U.S.C. § 12101, et seq., and the Age Discrimination Act of 1975 and/or any properly promulgated rules and regulations thereto and shall not discriminate against any individual on the grounds of age, sex, color, race, religion, national origin, or disability in connection with the performance under this Contract. Federal law requires UCAR to include all relevant special provisions of this Contract in every subcontract awarded over Ten Thousand Dollars ($10,000.00) so that such provisions are binding on each subcontractor.

**T.    Notices.**  All notices arising out of, or from, the provisions of this Contract shall be in writing and given to the parties at the address provided under this Contract, either by regular mail or delivery in person.  Any change of address must be provided in writing to both parties.

**U.    Prior Approval.**  This Contract shall not be binding upon either party, no services shall be performed under the terms of this Contract, and the Wyoming State Auditor shall not draw warrants for payment on this Contract, until this Contract has been reduced to writing and approved as to form by the Office of the Attorney General.

*Contract between Wyoming Business Council, University of Wyoming,*
*and the University Corporation for Atmospheric Research 2010-11*
*Page 6 of 8*

**V.      Publicity.**    Any publicity given to the program or services provided herein, including, but not limited to, notices, information, pamphlets, press releases, research, reports, signs, and similar public notices prepared by or for UCAR, and related to the services and work to be performed under this Contract, shall identify the Council as the sponsoring agency and shall not be released without prior written approval of the Council.

**W.      Severability.**    Should any portion of this Contract be judicially determined to be illegal or unenforceable, the remainder of this Contract shall continue in full force and effect, and either party may renegotiate the terms affected by the severance.

**X.      Sovereign Immunity.**    The State of Wyoming and the Council do not waive sovereign immunity by entering into this Contract, and specifically retain immunity and all defenses available to them as sovereigns pursuant to Wyo. Stat. § 1-39-104(a) and all other state law. Designations of venue, choice of law, enforcement actions, and similar provisions should not be construed as a waiver of sovereign immunity.

**Y.      Taxes.**    UCAR shall pay all taxes and other such amounts required by federal, state and local law, including but not limited to federal and social security taxes, workers' compensation, unemployment insurance and sales taxes.

**Z.      Termination of Contract.**    This Contract may be terminated, without cause, by either party upon thirty (30) days written notice.   The Council may terminate this Contract immediately for cause if UCAR fails to perform in accordance with the terms and conditions of this Contract. Should UCAR fail to perform in a manner consistent with the terms and conditions set forth in this Contract, payment under this Contract may be withheld until such time as UCAR performs its duties and responsibilities.

**AA.     Third Party Beneficiary Rights.**    The parties do not intend to create in any other individual or entity the status of third party beneficiary, and this Contract shall not be construed so as to create such status.   The rights, duties and obligations contained in this Contract shall operate only between the parties to this Contract, and shall inure solely to the benefit of the parties to this Contract.   The provisions of this Contract are intended only to assist the parties in determining and performing their obligations under this Contract.

**BB.     Time is of the Essence.**    Time is of the essence in all provisions of this Contract.

**CC.     Titles Not Controlling.**    Titles of paragraphs are for reference only, and shall not be used to construe the language in this Contract.

**DD.     Waiver.**    The waiver of any breach in term or condition in this Contract shall not

*Contract between Wyoming Business Council, University of Wyoming,*
*and the University Corporation for Atmospheric Research 2010-11*
*Page 7 of 8*

be deemed a waiver of any prior or subsequent breach. Failure to object to a breach shall not constitute a waiver.

9.      **Signatures.**    The parties to this Contract, either personally or through their duly authorized representatives, have executed this Contract on the dates set out below, and certify that they have read, understood, and agreed to the terms and conditions of this Contract.

The effective date of this Contract is the date of the signature last affixed to this page.

**WYOMING BUSINESS COUNCIL**

_____        _6·15·10_
Robert K. Jensen, Chief Executive Officer        Date

**GOVERNOR'S APPROVAL**

_____        _June 2, 2010_
Dave Freudenthal, Governor        Date
State of Wyoming

**UNIVERSITY CORPORATION FOR ATMOSPHERIC RESEARCH**

_____        _June 15, 2010_
Richard A. Anthes, President        Date

UNIVERSITY OF WYOMING

_____        _June 15, 2010_
Douglas H. Vinzant, Vice President for Administration        Date

**ATTORNEY GENERAL'S OFFICE APPROVAL AS TO FORM**

_____ #60528        _June 1, 2010_
Donald Gerstein, Senior Assistant Attorney General        Date

*Contract between Wyoming Business Council, University of Wyoming,*
*and the University Corporation for Atmospheric Research 2010-11*
*Page 8 of 8*

## Attachment A to WBC/UW/UCAR Contract

### Structural

| | |
|---|---|
| Size of structure | 153,302 square feet<br>17,680 penthouse<br>170,982 square feet |
| Height of structure | 62 feet to top of penthouse |
| Square footage of raised floor | 2 raised floor modules, 12,000 square feet each |
| Depth of raised floor | 10 feet |
| Height from the raised floor surface to the raised floor area ceiling | 12 feet |
| Height of interstitial space above raised floor ceiling space to hard roof | Average 9 feet |
| Size of Administration / Visitor Center space | 9,550 first floor<br>6,445 second floor<br>15,995 net square feet |
| Size of the Network Operations Center (NOC) | 3,560 net square feet |
| Size of the HPSS tape archival (Mass Store) area | 2,380 net square feet |
| Size of the HPSS expansion area | 4,026 nsqft<br>includes exercise room |
| Size of the Mechanical / Electrical Utility Plant (CUP) space<br>(Total CUP numbers do not include data room service floor or HPSS service floor) | 39,846 - Chiller floor<br>11,394 - Main floor<br>31,142 - Electrical floor<br>17,654 - Penthouse<br>100,036 - Total CUP |
| No elevation changes (ramps) from the loading dock to the equipment raised floor space | 0 |

Attachment A to
Contract between Wyoming Business Council, University of Wyoming,
and the University Corporation for Atmospheric Research 2010-11
Page 1 of 3

## Mechanical

| | |
|---|---|
| Size of chillers (large) - day one | 1000 tons |
| Quantity of large chillers | 1- day one - 1 add alt -  1 future |
| Size of chillers (small) | 100 tons |
| Quantity of small chillers | 2 |
| Quantity of cooling towers - day one | 2 - 2 cells each |
| Physical size of cooling towers | 56'L - 24'W - 12'H |
| Physical size of tower supply water tank | 66 feet high, 20 feet wide |
| Water tank capacity / gallons | 140,000 full - 128,00 operating |
| Size of fan wall units | 150'L - 8'H |
| Number of fans per fan wall / cubic feet per minute (cfm) | 96 fans  - 464,000 cfm |
| Physical size of heat exchangers | 12'6"L x 3'3" W x 9'H |
| Capacity of heat exchangers | 750 tons, 2 now, 2 future |

Attachment A to

Contract between Wyoming Business Council, University of Wyoming,

and the University Corporation for Atmospheric Research 2010-11

Page 2 of 3

## Electrical

| | |
|---|---|
| Incoming utility voltage | 24,940 V phase to phase - 14,400 V phase to ground |
| Voltage to supercomputers | 480 volts |
| Size of standby generators (each) | 2 / 2.5 MVA (TBD) |
| Quantity of standby generators - day one | 3 |
| Quantity of standby generators - final build out - Phase 1 | 9 |
| KW size of emergency "house" generator | 750 KW |
| Size of utility transformers | Ranges from 1 MVA to 2.240 MVA (Admin subs) Ranges from 2.240 MVA to 2.800 MVA ( Mechanical) Ranges from 3 MVA to 3.360 MVA to 4.200 MVA (UPS and HPC subs) |
| KW size and number of UPS (Uninterruptible Power Supply) systems | Initially 2 systems - 1 - 750 KVA module each Utimately 4 systems - 6 - 750 KVA modules each |
| Initial electrical transformer capacity Module A | 18.640 MVA |
| Total electrical transformer capacity - Modules A and B | 33.480 MVA |
| Total anticipated electrical capacity - Phase 2 - Modules C and D | 30 MVA |
| Watts per square foot - day one | 625 - high density (HPC) 250 medium density (IT) |

## General Statistics

| | |
|---|---|
| Water usage per day - day one maximum conditions | 40,000 gallons |
| Power usage - day one | 4~6MW |
| PUE - Power Usage Effectiveness (industry efficiency metric) | Minimum 1.3 - Design 1.10 |
| Approx. amount of water in system (thermal mass) | 200,000 gallons |
| Number of parking spaces | 48 car spaces 2 bus spaces |
| Current capacity of Happy Jack wind farm | 30 Megawatts |
| Total capacity of Happy Jack wind farm | 60 Megawatts |
| Miles between NCAR Mesa Lab and Cheyenne NWSC | 105 miles + or - |

Attachment A to

Contract between Wyoming Business Council, University of Wyoming,

and the University Corporation for Atmospheric Research 2010-11