## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:26-cv-01061-RBJ

UNIVERSITY CORPORATION FOR ATMOSPHERIC RESEARCH,

     Plaintiff,

v.

NATIONAL SCIENCE FOUNDATION, *et al*.,

     Defendants.

---

## PLAINTIFF UNIVERSITY CORPORATION FOR ATMOSPHERIC RESEARCH'S REPLY IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION

---

**A.    NSF Both Announced and Confirmed Its Decision to Transfer NWSC Stewardship**

The evidence proves final agency action—in the agency's own words. On February 12 NSF notified UCAR that "NSF ***has decided*** to transfer stewardship of the NCAR-Wyoming Supercomputer [sic] Center (NWSC)," requiring UCAR to "[c]oordinat[e] with a new managing entity." Dkt. 18-5 at 2 (emphasis added). Were there any lingering doubt, NSF snuffed it out at a March 11 meeting: "***This is a decision made.***"  Dkt. 18-3 ¶ 32 (emphasis added); *see also* Swofford, Laursen, Gilbert Declarations (filed herewith). UCAR filed suit five days later. Dkt. 1.

NSF's unequivocal statements defeat the government's claim that there has been no final action. Dkt. 32 ("Opp.") 1, 8-10. NSF (twice) announced "the 'consummation' of the agency's decisionmaking process," making clear that it had decided to strip UCAR of certain "rights or obligations" with respect to NWSC. *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). Particularly when coupled with the "presumption in favor of judicial review of administrative action," *Dekovic v. Rubio*, 169 F.4th 1002, 1011 (10th Cir. 2026), NSF's definitive statements foreclose

the argument that there has been no "final decision." Opp. 8, 10, 13.[1]

The Opposition entirely ignores the February 12 and March 11 statements. NSF's Acting Chief of Staff, for her part, attempts to rewrite the record (and the English language) by claiming that NSF's statements might have been "misinterpreted." Dkt. 32-1 ¶ 38. But courts do not defer to agency interpretations of their past statements absent "genuine ambiguity," *Kisor v. Wilkie*, 588 U.S. 558, 559 (2019). Here, there is none. When agencies leave no uncertainty that their decision has been made, their audience should be able to take them at their word. Having shut the administrative door with a final decision, NSF cannot now shut the courthouse door by claiming the decision was nonfinal. The possibility that an agency might "revise" its action based on "new information" "does not make an otherwise definitive decision nonfinal," *U.S. Army Corps of Engineers v. Hawkes Co.*, 578 U.S. 590, 598 (2016), nor may an agency "prevent an action from being considered final by simply leaving open the possibility that it may 'revisit' its decision in the future," *Dekovic*, 169 F.4th at 1011. Nothing permits NSF's even bolder strategy of claiming that a decision it announced with no ifs, ands, or buts was never final at all.

The argument that "UCAR continues to operate the NWSC today" because NSF "has not *actually* transferred anything" conflates the making of a decision with its implementation. Opp. 1, 9. "[T]he implementation of an already consummated final agency action is not itself final agency action"—meaning that a plaintiff who delays until implementation brings its challenge

---

[1] An agency "action" includes an "order" or the "equivalent" thereof, and an agency "order" is "the whole or a part of a final disposition," 5 U.S.C. §§ 551(6), (13). Here, as in many cases, the "action" is the "decision." *E.g.*, *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 659 (2007) ("final agency transfer decision"); *Dekovic*, 169 F.4th at 1011 ("reclassification decision"); *Cure Land, LLC v. U.S. Dep't of Ag.*, 833 F.3d 1223, 1230-31 (10th Cir. 2016) ("decision to issue" finding); *Kobach v. U.S. Election Assistance Comm'n*, 772 F.3d 1183, 1189-90 (10th Cir. 2014) ("decision" refusing to add language to voter registration form).

too late. *Sinclair Wyoming Refining Co. v. U.S. EPA*, 72 F.4th 1137, 1143 n.4 (10th Cir. 2023) (quotation marks omitted); *see also Village of Bald Head Island v. U.S. Army Corps of Eng'rs*, 714 F.3d 186, 194-95 (4th Cir. 2013) ("[Project] approval, not the [agency's] subsequent activities in carrying it out, was the final agency action."). Awaiting a consummated agency decision does not require awaiting "the consummation of threatened injury" after a decision is made. *Colorado v. Trump*, --- F. Supp. 3d ----, 2026 WL 734048, at *9 (D. Colo. Mar. 16, 2026).

**B.    UCAR Is Likely to Succeed on the Merits**

UCAR's APA claims are likely to succeed on the merits for any of three reasons.

First, irrespective of motive, NSF has no legal authority to transfer "stewardship" of NWSC. Dkt. 18 ("Mot.") at 5-7. That is a claim under the APA permitting this Court to enjoin NSF's decision because it is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C); *see* Dkt. 1 ¶¶ 114-117 (challenging NWSC transfer decision under APA only). The government confuses ultra vires *review*—allowed only when a decision is "*not* subject to review under the judicial-review provisions of the APA," *Nuclear Regulatory Comm'n v. Texas*, 605 U.S. 665, 681 (2025) (emphasis added)—with ultra vires *action* that is reviewable under the APA itself, *see Ramirez Ovando v. Noem*, 810 F. Supp. 3d 1209, 1219, 1235-37 (D. Colo. 2025). Plainly, NSF cannot exercise authority to transfer NWSC *stewardship* based on contracts that permit it to transfer "*title*" to NWSC real property. Opp. 4 (emphasis added); Dkt. 32-1 ¶¶ 27-28; Dkt. 32-2 § 1.9(b); Dkt. 32-4 at 6 § II.F; Dkt. 32-9 at 2. In fact, UCAR's Memorandum of Understanding with the University of Wyoming (to which NSF is expressly "not a party") only reinforces the distinctions between "title," "ownership," "use," and "operation" of NWSC. Dkt. 32-4 at 6-7 § II.F, *id.* at 9 § F. NSF has no authority, contractual or

otherwise, to order a transfer of NWSC *stewardship*.[2]

Second, regardless of motive, NSF's decision was "arbitrary," "capricious" and "without observance of procedure required by law," 5 U.S.C. §§ 706(2)(A), (D). Mot. 7-9. The Opposition does not dispute that NSF supplied no notice, opportunity to be heard, assessment of the evidence, consideration of important aspects of the problem, evaluation of reliance interests, or rationale for its decision. Indeed, the Opposition only amplifies the deficiencies. Apparently, NSF's Acting Director instructed his agency to "pursue transfer of stewardship of NWSC resources" on February 4, Dkt. 32-9 at 2, and in its extreme haste to complete that pursuit, NSF announced *just eight days later* that its decision had been made, Dkt. 18-5 at 2. NSF's announcement (and subsequent confirmation) of a decision without "gathering information," reviewing "approximately 2,500 responses" to the Dear Colleague Letter, receiving "an actionable proposal from any other entity" with the "capability to manage the NWSC," or performing "a risk review" of any alternative applicant, Opp. 1, 6-7, 14, only underscores the arbitrary and capricious nature of NSF's actions. The record does not prove the absence of a decision; it proves the absence of an informed, deliberative, and rational one.

Third, NSF's decision was "contrary to constitutional right, power, privilege, or immunity," 5 U.S.C. § 706(2)(B), because it was motivated by the unconstitutional aim of retaliating against Colorado. Mot. 9-11. The question "[a]t this stage" is only whether UCAR is "likely" to succeed on that theory (or any other), *see Mahmoud v. Taylor*, 606 U.S. 522, 546 (2025), and the government's evidence only adds to that likelihood. Even if OMB was

---

[2] Even if NSF could transfer NWSC title to UW without violating the APA, UW would breach its contract if it refused to enter into an "agreement specifying the terms under which NCAR will continue to use and operate the facility under UW ownership." Dkt. 32-4 at 7 § II.F.3.c.

UCAR REPLY ISO MOTION FOR PRELIMINARY INJUNCTION

considering restructuring NCAR in November 2025, Opp. 10; Dkt. 32-11 ¶ 5, that was within the same time period as the relentless demands that Colorado cede its sovereign powers by freeing Tina Peters and terminating mail-in voting. *See* Dkt. 1 ¶¶ 36-40. The anemic nature of the November 2025 memorandum to OMB also dispels any suggestion that the government was engaged in a legitimate process and instead corroborates that the objective was "expediting this process" to move "as quickly as possible." Dkt. 32-12 at 3-4. The race to dismantle NCAR fits comfortably within the federal government's broader campaign of retaliation against Colorado.[3]

## C.    UCAR Is Likely to Suffer Irreparable Harm Absent an Injunction

UCAR also easily establishes that it is "likely to suffer irreparable harm in the absence of preliminary relief," *Mahmoud*, 606 U.S. at 546. It is threatened with the loss of a highly-skilled workforce, difficult-to-quantify financial damage, and an inability to perform its contractual obligations and basic mission. Mot. 11-14. The threat to public safety from degraded forecasting is graver still. Mot. 14-15. But there is no need to "theorize[] harm," Opp. 14; UCAR has *already* experienced attrition linked to the NWSC transfer decision. Dkt. 18-3 ¶ 42.

NSF does not dispute any of these harms. Its opposition collapses on its mistaken contention that no decision has been made. Opp. 13-14. A decision has been made (and confirmed), and nothing requires UCAR to await the harm that will flow immediately from the decision's implementation. The whole point of "preventive relief" is to prevent that injury from happening. *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979).

---

[3] If NSF's decision rested in part on an unconstitutional motive, it must be vacated unless the Court is confident that NSF would have made the same decision absent the unconstitutional motive. *Zzyym v. Pompeo*, 958 F.3d 1014, 1031-33 (10th Cir. 2020); *see also Walton v. Powell*, 821 F.3d 1204, 1211 (10th Cir. 2016) (burden-shifting framework). And the mundane premise that the government may make funding decisions does not at all support the claim that it may retaliate against States for refusing to cede their Tenth Amendment sovereignty. Opp. 11-12.

UCAR REPLY ISO MOTION FOR PRELIMINARY INJUNCTION

Dated:  April 30, 2026                    HUESTON HENNIGAN LLP


                                          By:   */s/ Bram M. Alden*
                                                Michael M. Purpura
                                                Bram M. Alden
                                                Austin P. Reagan
                                                Emilie A. Miner
                                                620 Newport Center Dr., Suite 1300
                                                Newport Beach, CA 92660
                                                Telephone: (949) 432-6906
                                                mpurpura@hueston.com

UCAR REPLY ISO MOTION FOR PRELIMINARY INJUNCTION