**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:26-cv-01061-RBJ

UNIVERSITY CORPORATION FOR ATMOSPHERIC RESEARCH,

     Plaintiff,

v.

NATIONAL SCIENCE FOUNDATION, *et al.*,

     Defendants.

---

**PLAINTIFF UNIVERSITY CORPORATION FOR ATMOSPHERIC RESEARCH'S
RESPONSE TO THE UNIVERSITY OF WYOMING'S AMICUS BRIEF**

---

Pursuant to the Court's Order, Dkt. 38, UCAR submits this response to the amicus brief filed by the University of Wyoming in opposition to UCAR's Motion for Preliminary Injunction, Dkt. 35-1 ("UW Br."). UCAR makes just four points.

1.     UW's submission confirms that while NSF may have authority (if permissibly exercised) to transfer *title* to the NCAR-Wyoming Supercomputing Center, NSF has no authority to transfer *stewardship*, *operations*, or *maintenance* of the NWSC. UW correctly explains that it may "take title to the property upon the direction of NSF, even if UCAR remains in operational control of the NWSC." UW Br. 3 (citing MOU). The Use Agreement UW cites is in accord: in certain circumstances, UW may take "ownership of the NWSC," which precipitates a "transfer of title." Dkt. 35-3 § 11.3.2. UW tries to sneak in an additional right to "undertake maintenance of the NWSC," UW Br. 3, but that appears nowhere in the Use Agreement. The agreement is governed by Wyoming law, Dkt. 35-3 § 13.5, which sensibly holds that a party "cannot

reasonably expect benefits in excess of the clear terms of [its] contract," *Martin v. Farmers Ins. Exch.*, 894 P.2d 618, 622 (Wyo. 1995).

2.       The Court need not consider UW's argument for heightened scrutiny, UW Br. 6-7, because the government did not make that argument and thereby waived it. *See, e.g.*, *Dutcher v. Matheson*, 840 F.3d 1183, 1204 (10th Cir. 2016) (declining to consider argument raised by an amicus but not by the parties); *Cultural Care, Inc. v. AXA Ins. Co.*, 2018 WL 3008686, at *5 n.7 (D. Colo. Jun. 15, 2018) (defendant waived argument it failed to advance in its briefs). The argument, in any event is wrong. UCAR seeks a prohibitory injunction that *preserves* the status quo—UCAR's continued stewardship of the NWSC—by preventing Defendants from acting on their decision to divest UCAR of that role. Because the injunction would maintain the "last peaceable uncontested status existing between the parties before the dispute developed"—a status that could later be unwound if Defendants ultimately prevail on the merits of the case—it does not alter the status quo, require Defendants to take affirmative action, or afford UCAR all the relief it could recover at trial,[1] and the standard applicable to "disfavored" mandatory injunctions does not apply. *Schrier v. Univ. of Colorado*, 427 F.3d 1253, 1260 (10th Cir. 2005).

3.       UW thoroughly understates the irreparable harm that UCAR will suffer absent a preliminary injunction. Contrary to UW's assertion that "transition plans" can "avoid an exodus of NWSC's workforce," UW Br. 6, that exodus is already well underway—as reflected in the

---

[1] The requested relief could not possibly afford UCAR "all the relief" recoverable at trial given that UCAR's Complaint raises numerous claims not subject to its Motion for Preliminary Injunction. Moreover, the "all the relief" category of disfavored injunctions applies only where the effect of the preliminary injunction, once complied with, "cannot be undone." *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1249 (10th Cir. 2001). That is not the case here.

declarations of Rachel Wray and Christine Wiedinmyer—and only threatens to accelerate without the injunctive relief UCAR seeks. In addition to the loss of qualified employees, the threatened transfer of NWSC has impeded UCAR's recruiting efforts, leading promising candidates to decline UCAR's offers of employment and internship opportunities. *See* Wray Decl. ¶¶ 6, 11. Compounding the injury from this staffing shortfall, UCAR's "contracts and obligations of operations" cannot simply be "transferred to [a] new operator." UW Br. 9. Of the seven contracts related to UCAR's operation of the NWSC described in the Declaration of David Doty ("Doty Decl."), Dkt. 20-2, one flatly prohibits any assignment or transfer to a non-governmental operator, Doty Decl. ¶ 23; four require the vendor's prior written consent—which may be conditioned on additional charges or withheld entirely, Doty Decl. ¶¶ 7, 11, 15-16, 19; and one imposes liquidated damages of 50% of the remaining contract price upon early termination, Doty Decl. ¶ 7. It is thus incorrect to claim that "the only potential harm suffered by UCAR" without a preliminary injunction "is the expenditure of resources in providing the information requested of it from NSF." UW Br. 10. But even in the absence of evidence showing severe workforce attrition and the threat of incalculable monetary and reputational damages, the expenditure of resources to facilitate execution of NSF's transfer decision would require a substantial diversion from UCAR's mission, which is itself a form of irreparable harm. *See East Bay Sanctuary Covenant v. Garland*, 994 F.3d 962, 984 (9th Cir. 2020) ("Organizations may establish irreparable harm by showing ongoing harms to their organizational missions.").

4.      UW articulates a senseless accounting of the equities. UW's suggestion that it has the ability and wherewithal to manage the NWSC based on "a history of practical, hands-on experience with the NWSC" is mistaken. UW Br. 4. UW has not had any direct involvement in

UCAR RESPONSE TO UW AMICUS BRIEF

the day-to-day operations and maintenance of the NWSC facility, *see* Second Declaration of Krista Laursen ¶¶ 4-5, and transferring those responsibilities to UW risks grave harm to public safety. UW's claim that those grave threats will somehow come to pass if the injunction is *granted* makes no sense. *See* UW Br. 10 ("Granting the injunction only assures an operational void if the case is decided on the merits in favor of Defendants and substantially heightens the possibility that the harms cited in the Motion could occur."). If a preliminary injunction is granted but Defendants later prevail, they can (and must) coordinate an orderly NWSC transfer *after* the injunction is dissolved. Preventing Defendants from taking the steps to implement their transfer decision now does nothing to stop them from taking those steps later if they ultimately prevail on the merits.

Dated: April 30, 2026                                    HUESTON HENNIGAN LLP


By:    */s/ Bram M. Alden*
       Michael M. Purpura
       Bram M. Alden
       Austin P. Reagan
       Emilie A. Miner
       620 Newport Center Dr., Suite 1300
       Newport Beach, CA 92660
       Telephone: (949) 432-6906
       mpurpura@hueston.com