**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 26-cv-01061-RBJ

UNIVERSITY CORPORATION FOR ATMOSPHERIC RESEARCH,

Plaintiff,

v.

NATIONAL SCIENCE FOUNDATION, *et al.*,

Defendants.

---

**DEFENDANTS' MOTION FOR VACATUR AND REMAND OF CLAIMS BROUGHT UNDER THE ADMINISTRATIVE PROCEDURE ACT, AND REQUEST TO SUSPEND DEADLINE TO ANSWER APA CLAIMS AND RELATED ALLEGATIONS IN THE FIRST AMENDED COMPLAINT**

---

On June 1, 2026, this Court entered a preliminary injunction, finding that certain actions taken by Defendant National Science Foundation ("NSF") relating to the NCAR-Wyoming Supercomputing Center ("NWSC")—in essence, NSF's alleged decision to "divest" Plaintiff University Corporation for Atmospheric Research ("Plaintiff" or "UCAR") of stewardship over the NWSC—were inadequately explained and otherwise procedurally deficient. While the government disagrees with this Court's conclusion, it nevertheless respectfully moves this Court to enter an order permanently vacating the specific NSF decisions at issue in the preliminary injunction (and the other decisions challenged in the Amended Complaint under the Administrative Procedure Act, "APA"); remanding to the Defendant Agencies for further consideration; and ultimately dismissing the APA claims in this case as moot (and thereby dissolving the preliminary injunction). Such an order would provide Plaintiff the entire relief to

which it would be entitled if it were to prevail on final judgment under the APA, without improperly precluding Defendants from taking new agency actions, supported by a new record, should they determine that doing so is warranted. At minimum, or in the alternative, the Court should clarify (or, as needed, modify) its preliminary injunction to reflect that the injunction does not prevent Defendants from taking any new, final agency action that would affect stewardship of the NWSC.

Defendants are cognizant of the operative September 30 deadline to respond to the Amended Complaint. *See* ECF 56. Given the instant Motion to Vacate, which—if granted—would obviate the need for any further litigation with respect to the APA claims, Defendants further respectfully request that their response to the APA allegations and claims be suspended pending final resolution of this Motion. Defendants will timely respond to the Amended Complaint as it pertains to Plaintiff's newly added claims brought under the Freedom of Information Act ("FOIA"). *See In re Vaughan Co., Realtors*, 477 B.R. 206, 226–27 (Bankr. D.N.M. 2012) ("The large majority of courts addressing this issue have held that when a defendant timely files a motion to dismiss under Rule 12(b)(6), . . . Rule 12(a)(4)(A) extends the time to file an answer as to all claims, including those not addressed by the motion to dismiss." (citing cases)); *e.g.*, *Kent v. Geren*, 2008 WL 150060, at *1 (D. Colo. Jan. 11, 2008).

In further support of this Motion, Defendants state the following.[1]

[1] Plaintiff declined to provide a position on the relief requested in this Motion. Instead, Plaintiff indicated that it "will determine its position and inform the Court once it has an opportunity to review the motion."

**PROCEDURAL HISTORY**

Plaintiff originally filed suit on March 16, 2026, ECF 1 (Compl.), alleging that certain actions undertaken or purportedly directed by Defendants NSF, the United States Department of Commerce ("Commerce"), and the United States Office of Management and Budget ("OMB") violate the APA. *See id.* ¶ 8 (listing the four types of allegedly wrongful conduct). Plaintiff's claims were exclusively brought under the APA; it did not bring any freestanding constitutional claims. *See generally id.* Before Defendants had responded to the Complaint, on August 26, 2026, Plaintiff filed a First Amended Complaint. ECF 54 (Am. Compl.). The Amended Complaint, like its predecessor, does not bring any freestanding constitutional claims. *See generally id.* The principal change between the Complaint and the Amended Complaint is Plaintiff's addition of three FOIA claims, which Plaintiff brings against each of the existing Agency Defendants for their alleged failure to respond to various FOIA requests. *See id.* ¶¶ 155–78 (new Counts 6–8); ECF 53-1 (Redlined Am. Compl.). Defendants will respond to the FOIA claims in due course.

The agency actions challenged by Plaintiff under the APA in its Amended Complaint (hereafter, the "Challenged Conduct") are: (i) NSF's alleged decision to "divest UCAR of its stewardship of the [NWSC]" and more broadly to "dismantle" the National Center for Atmospheric Research ("NCAR"), which UCAR manages—a decision putatively announced on December 17, 2025; furthered in a January 23, 2026, Dear Colleague Letter; formalized in a February 12, 2026, letter from NSF to NCAR; and underscored in a February 23, 2026, email from NSF to NCAR; (ii) the National Oceanic and Atmospheric Administration's ("NOAA") alleged termination, on December 19, 2025, of a cooperative agreement with UCAR that had been designed to fund climate adaptation and mitigation research; (iii) NSF's alleged imposition of

"disparate and undue reporting burdens" on UCAR and NCAR, allegedly dictated in communications from NSF on February 5 and 23, 2026; and (iv) NSF's alleged imposition of "gag orders" on UCAR and NCAR officials, supposedly reflected in a January 23, 2026, letter from NSF to UCAR and in a February 12, 2026, letter from NSF to NCAR. *E.g.*, Am. Compl. ¶¶ 8, 9, 19, 57–59, 62, 69, 86, 89, 93, 95, 112 & Exs. 1, 2, 5, 6, 8, 11, & 12. As discussed *infra* Argument § II, at Plaintiff's request, NSF has since expressly disavowed to Plaintiff, in writing, that the challenged communications were intended to be or should be interpreted as "gag orders."[2]

Plaintiff asks the Court for declaratory and injunctive relief "prohibiting Defendants from implementing or continuing to implement" the Challenged Conduct and "compelling Defendants to reverse any such" allegedly "retaliatory actions taken to date." *See, e.g.*, Am. Compl. ¶ 135; *id.* Prayer for Relief (asking Court to "[s]et aside and vacate" the Challenged Conduct). On June 1, 2026, this Court granted Plaintiff's request for a Preliminary Injunction as to the NWSC and preliminarily enjoined Defendants from "divesting UCAR or NCAR of any rights, resources, or responsibilities related to the NWSC." ECF 47 ("PI Order"). Specifically, the PI Order concluded that Plaintiff had established "final agency action" and a ripe claim given February 12 and 23, 2026, communications from NSF employees to Plaintiff. *Id.* at 15–22 (Court holding that "at least as of February 12, and going forward, there was nothing 'tentative or interlocutory' about NSF's

[2] Plaintiff challenges certain communications on multiple grounds, as reflected above. For instance, Plaintiff challenges the February 12, 2026, letter (Am. Compl., Ex. 5) on the ground that it both purportedly reflects a decision to "divest" UCAR of stewardship over the NWSC and allegedly imposes a "gag order." Plaintiff challenges the February 23, 2026, email (Am. Compl., Ex. 6) on the ground that it allegedly reflects a decision to "divest" UCAR of stewardship over the NWSC, as well as on the ground that it imposes a "disparate and undue" reporting burden on UCAR and NCAR.

position," and that "Ms. Hatch and Dr. Ellis plainly communicated the transfer decision on behalf of the agency." (citations omitted)). On the merits, the Court held that Plaintiff was "likely to succeed on its claim that NSF's decision to divest it of stewardship over the NWSC was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Id.* at 23 (quoting 5 U.S.C. § 706(2)(A)).

Since the filing of the Complaint, NSF produced an administrative record relating to its NWSC decision, ECF 31; the Parties briefed Plaintiff's motion for preliminary injunction relating to NSF's NWSC decision, ECF 18; and, on June 1, 2026, the Court granted Plaintiff's motion for preliminary injunction, ECF 47. Before Defendants' deadline to respond to the Complaint had passed (*see* July 10, 2026, Minute Order), Plaintiff filed an Amended Complaint to which it added three FOIA claims and a handful of allegations premised off developments in a different case in which UCAR is not a party, also pending before this Court. ECF 54.

## LEGAL STANDARD

"Administrative agencies have an inherent authority to reconsider their own decisions, since the power to decide in the first instance carries with it the power to reconsider." *Trujillo v. Gen. Elec. Co.*, 621 F.2d 1084, 1086 (10th Cir. 1980). Indeed, "[w]hen an agency seeks a remand to take further action consistent with correct legal standards, courts should permit such a remand in the absence of apparent or clearly articulated countervailing reasons." *Savelkoul v. Driscol*, 2025 WL 3300334, at *3 (D. Colo. Mar. 7, 2025) (quoting *Citizens Against Pellissippi Parkway Extension, Inc. v. Mineta*, 375 F.3d 412, 416 (6th Cir. 2004)), *denying mot. to amend*, 2025 WL 3300335 (D. Colo. Apr. 24, 2025). "Otherwise, judicial review is turned into a game in which an agency is 'punished' for procedural omissions by being forced to defend them well after the agency

has decided to reconsider." *Citizens Against Pellissippi Parkway Extension*, 375 F.3d at 416.

## **ARGUMENT**

This Court should order vacatur of the Challenged Conduct and remand to the Defendant Agencies, as discussed further below (except for the alleged "gag orders," which should be dismissed). Courts "commonly grant such motions, preferring to allow agencies to cure their own mistakes rather than wasting the courts' and the parties' resources[.]" *Ethyl Corp. v. Browner*, 989 F.2d 522, 524 & n.3 (D.C. Cir. 1993) (citing cases). Here, judicial economy and the interests of the Parties would be best served by an immediate vacatur and remand order rather than further litigation that, even if Plaintiff prevailed, would result in no different outcome.

That is so because vacatur is the only relief to which the APA could ever entitle Plaintiff, assuming Plaintiff could prevail on the merits of its APA claims. A court reviewing an APA challenge may either "compel agency action unlawfully withheld" (not relevant here); or (as relevant here) "hold unlawful and set aside agency action . . . found to be[]" (i) "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"; (ii) "contrary to constitutional right, power, privilege, or immunity"; (iii) "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right"; or (iv) "without observance or procedure required by law." 5 U.S.C. § 706; *see* PI Order at 23. Accordingly, "[e]xcept in limited circumstances, vacatur is the typical and appropriate remedy under the APA for unlawful agency action." *Wyoming v. U.S. Dep't of Interior*, 493 F. Supp. 3d 1046, 1085 (D. Wyo. 2020) (citing *Am. Great Lakes Ports Ass'n v. Schultz*, 962 F.3d 510, 518 (D.C. Cir. 2020) and *High Country Conservation Advocs. v. U.S. Forest Serv.*, 951 F.3d 1217, 1228 (10th Cir. 2020)), *vacating and dismissing appeal as moot in light of regulatory change*, 2024 WL 3791170 (10th Cir. Aug. 13,

2024); *see also Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 826–30 (2024) (Kavanaugh, J., concurring).[3] Further litigation of Plaintiff's APA claims, therefore, serves no purpose—as the APA does not authorize the Court to permanently enjoin Defendants from taking new agency actions in the future.

## I. The Court Should Vacate and Remand (a) NSF's Alleged Decision to Transfer "Stewardship" of the NWSC or Otherwise "Dismantle" NCAR; (b) NOAA's Allegedly Unlawful Termination of the Climate Adaptation and Mitigation Grant; and (c) NSF's Application of Allegedly "Undue" Reporting Requirements to Plaintiff.

Since this Court issued the PI Order, Defendants have concluded that the most appropriate resolution to this case is not further litigation, but rather for this Court to vacate the Challenged Conduct with a remand to NSF and NOAA—excepting the alleged "gag orders," discussed separately below. The vacatur and remand should cover the following Challenged Conduct:

a. NSF's alleged decision to transfer stewardship of the NWSC or otherwise "dismantle" NCAR, Am. Compl. ¶ 8(a); *see also id.* ¶¶ 55–68;

b. NOAA's alleged termination of its cooperative agreement with UCAR relating to climate adaptation and mitigation research, Award No. NA23OAR4310473B, *id.* ¶ 8(b); *see also id.* ¶¶ 69–84; and

c. NSF's application of allegedly undue reporting requirements to UCAR and NCAR through Hatch's February 5, 2026, e-mail to UCAR and NCAR and Ellis's February 23, 2026, e-mail to UCAR and NCAR, *id.* ¶ 8(c); *see also id.* ¶¶ 85–91; *id.*, Exs. 6 & 11.

[3] This case is not one of the "limited circumstances" where remand *without* vacatur would be appropriate. *See Wyoming*, 493 F. Supp. 3d at 1085; *Am. Great Lakes Ports Ass'n*, 962 F.3d at 518–19.

**II. The Court Should Dismiss the Remainder of Plaintiff's Case, Relating to Alleged "Gag Orders," Because NSF Has Since Clarified the Subject Communications and Acknowledged that "Gag Orders" Would Be Impermissible.**

The Amended Complaint also challenges alleged "gag orders" NSF issued to UCAR and NCAR officials earlier this year. *E.g.*, Am. Compl. ¶ 8(d); *see also id.* ¶¶ 92–102 (describing the alleged gag orders); PI Order at 17 n.4. Because NSF has already clarified in writing that any such gag orders have been withdrawn, there is no longer any basis to litigate these claims.

According to the Amended Complaint, these alleged "speech restraints" "commenced on January 23, 2026 (the same day as the Dear Colleague Letter), when NSF sent a formal letter to UCAR addressing its leadership's 'oral statements and written communications' regarding the future of NCAR." Am. Compl. ¶¶ 93–94 & Ex. 12. UCAR alleges that a second restraint occurred on February 12, 2026, when NSF sent another letter—this time to NCAR—"purporting to impose an even more far-reaching restraint on speech." *Id.* ¶¶ 95–96 & Ex. 5.

On March 26, 2026, counsel for the Government, on behalf of Defendant NSF, emailed Plaintiff to provide clarification about these challenged communications and to "help resolve any ongoing misunderstanding." Relevant here, Government counsel explained:

> As background, on January 23, 2026, NSF Awards Officer Kapua[] Hatch sent a letter to NCAR Director Dr. Everette Joseph and Ms. Thao Tsuda reminding UCAR of its obligations as a Federally Funded Research and Development Center ("FFRDC"). That letter addressed longstanding Award Term and Condition 28(b) of the Cooperative Agreement between NSF and UCAR, which requires UCAR to (1) consult with the cognizant NSF Program Officer or designee prior to any significant public relations activities (or events of any substantive inquiries from the media or Congress), including providing advance copies of any news or press releases; and relatedly (2) provide timely notification to the cognizant NSF Program Officer or designee of such inquiries. The letter also noted UCAR's obligations under 31 U.S.C. § 1352 and 2 C.F.R. § 200.450(b), which address the use of federal funds in connection with federal awards. On February 12, 2026, Ms. Hatch sent a follow-up letter to Dr. Joseph noting that public statements related to UCAR's planned restructuring effort would be subject to Condition 28(b).

> To be clear, Standard Condition 28(b), to which the January and February 2026 letters referred, is not a "gag order" that would prohibit UCAR's leadership or employees from making statements about a particular matter. Rather, it is designed to facilitate transparency and communication between UCAR and NSF by requiring advance notice and consultation before certain significant public events. The Condition does not place—and should not be understood to place—a substantive veto by NSF on the statements that UCAR can make. The scope of Condition 28(b) is limited in an additional key respect: it applies only to public relations activities that are federally funded by NSF under the award to UCAR. If UCAR wishes to engage in public advocacy or lobbying, it is free to do so using its own private funds. Finally, the coordination requirements reflected in Condition 28(b) are neither unique nor new. Compliance with Condition 28(b) for all awardees, including UCAR, is taken very seriously by NSF. Breaches of Condition 28(b) for other cooperative agreements have resulted in the issuance of a notice of material non-compliance and the requirement to implement corrective actions.
>
> In sum, NSF has a legitimate interest in being kept informed of significant developments affecting the FFRDC it funds, and the advance consultation requirement of Condition 28(b) is the agreed-upon mechanism for ensuring that coordination occurs. ***NSF agrees that a "gag order" would likely be improper, and no such "gag order" has been imposed here. Again, UCAR is free to issue whatever statements it likes using its own funds, and it can issue its own statements using federal funds so long as those comport with the notification requirements in Condition 28(b) and the lobbying restrictions set forth in generally applicable federal statutes and regulations.***
>
> I hope this background clarified the intent behind the letters and effect NSF sent to UCAR. ***To the extent you would request a formal follow-up letter from NSF to confirm the above, we can facilitate that.*** Moreover, in our view this clarification would obviate any need for emergency relief regarding your claims about this communication. If you have further concerns, we are happy to discuss. We look forward to continuing this dialogue with you should you have any further questions.

(emphases added).

Plaintiff responded, in relevant part:

> [W]e certainly appreciate NSF's acknowledgment that a gag order would be improper, and we are glad to work constructively to obviate the need for emergency relief regarding UCAR's claims related to First Amendment freedoms. Your suggestion of a formal letter from NSF makes good sense. Consistent with your email, we would ask that such a letter state unequivocally that there are no

restrictions on the speech or expression of UCAR or NCAR officials beyond (a) the specific consultation and notification obligations of Term and Condition 28(b) of NSF's standard Cooperative Agreement Financial & Administrative Terms and Conditions and (b) the lobbying restrictions set forth in generally applicable federal laws.

NSF immediately complied with Plaintiff's request for a formal letter, informing Plaintiff that the agency "has imposed no greater limitations or restrictions on public comment than otherwise independently required under (i) the terms of NSF's standard Cooperative Agreement Financial & Administrative Terms and Conditions, specifically, Condition 28(b); and (ii) 31 U.S.C. § 1352 and 2 C.F.R. § 200.450(b)." *See* Am. Compl. ¶ 103 & Ex. 14 (Apr. 1, 2026, Letter). Because there is no factual dispute that the alleged "gag orders" were not gag orders at all—and, for the avoidance of doubt, NSF has agreed to retract them, *see infra*—Plaintiff's claims arising from the challenged "gag orders" should be dismissed.[4]

The three new paragraphs in the Amended Complaint, seemingly raising additional First-Amendment concerns, do not affect this outcome. At Paragraphs 105–07, the Amended Complaint addresses NSF's alleged handling of other events and media requests in April, May, June, and July. Am. Compl. ¶¶ 105–07. Plaintiff's counsel did not raise concerns about any of these issues to defense counsel when they actually occurred. Plaintiff instead raised some of them during a telephonic meet-and-confer with defense counsel on Monday, July 20, 2026. During that call, and again in writing thereafter, defense counsel asked Plaintiff's counsel to "send us the

[4] Defendants recognize the Court's standard procedure for briefing motions to dismiss, as an initial matter, by letters of intent. *See* Practice Standards at 1–2. However, given the instant Motion to Vacate, and in the interest of efficiency and completeness of the record, Defendants believed it appropriate to include this issue in this filing. To the extent the Court instead prefers Defendants seek separate authorization to move to dismiss the "gag order" allegations in the Amended Complaint, Defendants will do so.

communications from NSF about which your clients had concerns, so we can look into them[.]"

**Exhibit A** (July 22, 2026, email). Plaintiff, however, responded:

> Thank you for talking earlier this week and for checking back in. ***We conferred with our client and are pleased to report that most of their First Amendment concerns have recently been allayed.*** While there were unusual conditions placed on NCAR's participation in the upcoming NASA media day related to the INSPYRE campaign, and while it took multiple requests over the course of months to secure approval for interviews with filmmaker Lucian Read, the outcome on those projects is acceptable to our client, and we therefore do not now intend to add them to our complaint. The third recent media request that I mentioned, related to an interview with Meteorological Technology International Magazine, is no longer on the table as the reporter hit his deadline. We do not now intend to litigate that matter either.
>
> ***We are optimistic that the UCAR/NCAR relationship with NSF is moving in the right direction and therefore are not asking you to investigate further at this time.*** If circumstances change, we will be sure to reach out to you before filing any motion to amend or preliminary injunction request. We appreciate your willingness to work collaboratively with us to try to avoid any additional work for either the parties or the Court.

*Id.* (emphases added).

Given Plaintiff's counsel's written representation that their recent First Amendment concerns had "been allayed," and further given Plaintiff's counsel's direct statement that Plaintiff was "not asking [Defendants] to investigate further at this time," Defendants did not pursue the matter further. *Id.* Defendants had no notice of Plaintiff's reincarnation of First Amendment concerns in their Amended Complaint (that Plaintiff had previously informed Defendants in writing were no longer concerns at all, *see supra*). NSF is prepared to provide whatever written assurance Plaintiff (or the Court) claims still to need that Plaintiff is not, and never was, subject to an NSF-issued "gag order."

### III. Defendants' Proposal for Further Agency Decisions Is Reasonable and Will Benefit All Parties.

Following remand, Defendants intend to do the following:

a. NSF will formally retract the December 17, 2025, letter to UCAR and NCAR regarding NSF's intent to release the subject Dear Colleague Letter ("DCL"). *See* Am. Compl. ¶¶ 57, 110; *id.*, Ex. 1; *see also* PI Order at 8–9.

b. NSF will formally retract the January 23, 2026, and February 12, 2026, letters, that Plaintiff alleges (*inter alia*) imposed "gag orders" on it and NCAR. *See* Am. Compl. ¶¶ 59, 93–95; *id.*, Exs. 5 & 12; *see also* PI Order at 10–11, 15–17, 18–19.

c. NSF will further retract the February 4, 2026, memorandum from Brian Stone to Linnea Avallone, the February 5, 2026, e-mail from Hatch to UCAR and NCAR, and the February 23, 2026, e-mail from Ellis to UCAR and NCAR. *See* NSF_AR_00004245; Am. Compl. ¶ 8(c); *id.* ¶¶ 85–91; *id.*, Exs. 6 & 11; *see also* PI Order at 11, 15–17.

d. Defendants will issue a new DCL that will expressly state that it supersedes the January 23, 2026, DCL, *e.g.*, Am. Compl. ¶¶ 58, 112; *see id.*, Ex. 2, allowing 60 days for public comment and, after the deadline for comment has passed, allowing 60 days for consideration of those comments. *See also* PI Order at 9–10.

e. NOAA will issue a new Notice of Award to UCAR for Award No. NA23OAR4310473B, which will void the termination and reinstitute funding. *E.g.*, Am. Compl. ¶ 8(b); *see also id.* ¶¶ 69–84 & Exs. 8–10. As deadlines under the original Notice of Award have lapsed, NOAA grants personnel will contact UCAR to establish a new timeline to complete the subject project.

**IV. Alternatively, this Court Should Clarify or Modify Its Preliminary Injunction**

In the alternative, Defendants respectfully request this Court clarify or modify its preliminary injunction to make clear that the injunction exclusively governs the specific agency actions that Plaintiff challenged here with respect to the NWSC, rather than any future actions the government might take following additional consideration.

As set out above, this Court has concluded that certain actions taken by the government were likely unlawful because they were inadequately explained or otherwise procedurally deficient. Defendants are not asking this Court to revisit its conclusion, and indeed are asking the Court to vacate those agency actions and thereby wipe the slate clean. Now that Defendants have committed to withdrawing those actions, however, there is no basis for this Court to maintain an injunction that broadly prevents the government from "divesting UCAR or NCAR of any rights, resources, or responsibilities related to the NWSC" in the future; instead, should the government take future steps to attempt to change responsibility for the NWSC, that will be a new decision supported by a new record. PI Order at 37. At minimum, then, in light of Defendants' decision to vacate the Challenged Conduct with respect to the NWSC, this Court should clarify—or if necessary, modify—its preliminary injunction to make clear that it only governs those agency actions that have already occurred, and does not purport to bar Defendants from making hypothetical future decisions on a new record.

This Court has the discretion to modify its injunction. *Cablevision of Tex. III, L.P. v. Okla. W. Tel. Co.*, 993 F.2d 208, 210 (10th Cir. 1993). "When considering whether to modify a preliminary injunction, a district court is not bound by a strict standard of changed circumstances but is authorized to make any changes in the injunction that are equitable in light of subsequent

changes in the facts or law or for any other good reason." *Basic Rsch., L.L.C. v. Cytodyne Techs., Inc.*, 2000 WL 33363261, at *11 (D. Utah Dec. 20, 2000) (citation omitted). Defendants have committed to effectively giving Plaintiff all the relief it seeks under the APA by vacating the Challenged Conduct. That change in circumstances is adequate reason to modify the preliminary injunction so that it does not prevent future agency decision-making.

## CONCLUSION

Defendants respectfully request that this Court not require pointless litigation and instead enter an order that would provide Plaintiff the complete relief to which it would be entitled, if it were to prevail on final judgment on its APA claims, by vacating the challenged agency actions listed above and remanding the matter to Defendant Agencies. At minimum, the Court should modify or clarify the injunction to indicate that it does not preclude Defendants from making future decisions regarding stewardship of the NWSC. Defendants further respectfully request that their response to the APA allegations and claims be suspended pending final resolution of the Motion to Vacate. Defendants will timely respond to the new FOIA claims on or before September 30, 2026.

BRETT A. SHUMATE
Assistant Attorney General

/s/ Marianne F. Kies
JOSEPH E. BORSON
MARIANNE F. KIES
Assistant Branch Directors
Civil Division
Federal Programs Branch

U.S. Department of Justice
Civil Division
Federal Programs Branch
1100 L Street, NW

Washington, D.C. 20005
(202) 353-1819
Marianne.F.Kies@usdoj.gov
*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I certify that on September 24, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of the filing to counsel of record.

*s/ Marianne F. Kies*
Marianne F. Kies